**NICHOLAS & TOMASEVIC, LLP**
    Craig M. Nicholas (SBN 178444)
    Alex M. Tomasevic (SBN 245598)
    Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**WINTERS & ASSOCIATES**
    Jack B. Winters, Jr. (SBN 82998)
    Georg M. Capielo (SBN 245491)
    Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SIINO, Individually and on Behalf of the Class;<br><br>                    Plaintiff,<br><br>    vs.<br><br>FORESTERS LIFE INSURANCE AND ANNUITY COMPANY, a New York Corporation.<br><br>                    Defendant. | CASE NO.:  3:20-cv-02904-JST<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date**: June 10, 2021<br>**Hearing Time**: 2:00 p.m.<br>**Location**: Courtroom 6, 2nd Floor<br><br>**District Judge**: Hon. Jon S. Tigar<br><br>**Action Filed**: April 28, 2020 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS
        CERTIFICATION ..................................................................................................... 3

        A.      The Statutes at Issue and Their Important Purpose. ................................ 3

        B.      The Statutes Mandate Strict Compliance.  Failure to Comply
                Renders Any Attempted Termination Null & Void. .................................. 4

        C.      Plaintiff Pamela Sinno's Policy and the Purported Termination. ............. 5

        D.      Defendant's Procedures Relating to Pre-2013 Policies. ........................... 7

III.    ARGUMENT ............................................................................................................. 8

        A.      Plaintiff's Putative Class Satisfies Each of Rule 23(a)'s
                Requirements. ............................................................................................ 9

                1.      Numerosity is easily satisfied here. ............................................... 9

                2.      The claims of Plaintiff and her fellow class members share
                        common questions of fact and law. ............................................. 10

                3.      Plaintiff's claims are typical because she is perfectly aligned
                        with her putative class members. ................................................ 12

                4.      Plaintiff is an adequate representative. ...................................... 13

        B.      Plaintiff's Claims Also Satisfy at Least Two Provisions of Rule
                23(b). ........................................................................................................ 14

                1.      Plaintiff Has Satisfied the Requirements for a Declaratory or
                        Injunctive Relief Class under Rule 23(b)(2). .............................. 14

                2.      Plaintiff's claims also satisfy Rule 23(b)(3)'s
                        "Predominance" and "Superiority" Requirements. ..................... 16

                        a.      Nearly every important factual and legal issue in this
                                matter is common among class members.  As such,
                                common issues predominate. ........................................... 16

                        b.      Class adjudication of this dispute is far superior to
                                individual lawsuits. ......................................................... 18

        C.      In the Alternative, the Court Could Certify An Issue Class
                Under Rule 23(c)(4). ................................................................................ 20

IV.     CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alba v. Papa John's USA*,
   2007 U.S. Dist. LEXIS 28079 (C.D.Cal. Feb. 8, 2007) .......................................................19

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...........................................................................................................16

*Anderson v. Heart Fed. Sav. & Loan Assn.*,
   208 Cal. App. 3d 202 (Cal. App. 3d Dist. 1989)..................................................................5

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ..............................................................................................12

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3rd Cir. 1994)..................................................................................................15

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
   2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) ...................................................................13

*Bentley v. United of Omaha Life Ins. Co.*,
   No. CV157870DMGAJWX,
   2018 WL 3357458 (C.D. Cal. May 1, 2018).......................................................4, 11, 13, 16

*Boyd v. Bank of Am. Corp.*,
   300 F.R.D 431 (C.D. Cal. 2014) .........................................................................................13

*Briseno v. Con Agra Foods, Inc.*,
   844 F. 3d 1121 (9th Cir. 2017)..............................................................................................9

*Brown v. Kelly*,
   609 F3d 467 (2nd Cir. 2010) ..............................................................................................15

*Caminetti v. Manierre*,
   23 Cal. 2d 94 (1943)...........................................................................................................15

*Durant v. State Farm Mut. Auto. Ins. Co.*,
   2017 U.S. Dist. LEXIS 34157 (D. Wash. March 9, 2017)..............................................12, 17

*Ellsworth v. U.S. Bank, N.A.*,
   2014 U.S. Dist. LEXIS 81646 (N.D.Cal. June 13, 2014).....................................................19

*Flo & Eddie Inc. v. Sirius XM Radio, Inc.*,
   2015 U.S. Dist. LEXIS 98656 (C.D. Cal. May 27, 2015)................................................10, 12

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
   672 F.3d 402, 427 (6th Cir. 2012) ......................................................................................15

*Hahn v. Massage Envy Franchising, LLC*,
   No. 12CV153 DMS BGS,
   2014 WL 5099373 (S.D. Cal. Apr. 15, 2014) ....................................................................17

*Halberstam as Tr. of Zupnick Fam. Tr. 2008 B v. Allianz Life Ins. Co. of N.A.*,
    349 F. Supp. 3d 164 (E.D.N.Y. 2018) ..................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................10, 12, 16

*In re Toys R Us – Delaware, Inc. v. Fair & Accurate Credit Transactions Act Litig.*,
    300 F.R.D 347 (C.D. Cal. 2013) ........................................................................9

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sep. 24, 2013) ...............................16

*Johnson v. Hartford Cas. Ins. Co.*,
    2017 WL 2224828 (N.D. Cal. May 22, 2017) ...................................11, 17, 19, 20

*Korbholz v. Great-W. Life & Annuity Ins. Co.*,
    03-03792 JSW,
    2009 WL 159869 (N.D. Cal. Jan. 20, 2009) .....................................................15

*Kotlar v. Hartford Fire Ins. Co.*,
    83 Cal.App.4th 1116, 1121-1122 (2000) ...........................................................4

*Lee v. Industrial Indemn. Co., Inc.*,
    177 Cal.App.3d 921 (1986) ..............................................................................4

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013)............................................................................18

*Liebovich v. Shahrokhkhany*,
    56 Cal. App. 4th 511 (Cal. App. 2d Dist. 1997)................................................5

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) ....................................................................20

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)..........................................................................13

*Mackey v. Bristol West Ins. Services of CA, Inc.*,
    105 Cal.App.4th 1247 (2003)............................................................................4

*Miletak v. Allstate Ins. Co.*,
    2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) ................................17

*Nat. Auto. & Cas. Ins. Co. v. Cal. Cas. Ins. Co.*,
    139 Cal.App.3d 336 (1983) ..............................................................................4

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ....................................................................10

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)............................................................................12

*Rannis v. Recchia*,
    380 Fed. Appx. 646 (9th Cir. 2010) ..................................................................9

*Thomas v. State Farm Ins. Co.*,
    424 F. Supp. 3d 1018 (S.D. Cal. 2019) ...............................................................4, 5

*Vaccarino v, Midland Nat'l Life Ins. Co.*,
    2013 U.S. Dist. LEXIS 88612 (C.D. Cal. June 17, 2003).................................12, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................10, 11

*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .........................................................................12, 18

*Yokoyama v. Midland Nat. Life Ins.*,
    594 F.3d 1087 (9th Cir.2010) ................................................................................18

## STATUTES

Cal. Civ. Proc. Code § 3289 ..............................................................................................18

Cal. Civ. Proc. Code section 1671 .....................................................................................17

Cal. Ins. Code § 41 ..............................................................................................................3

Cal. Ins. Code §§ 10113.71 ......................................................................................1, 3, 4, 5

Cal. Ins. Code, § 10113.72 ..........................................................................................1, 3, 4

## OTHER AUTHORITIES

Adv. Comm. Note (1966) 39 F.R.D. 98, 102 .....................................................................15

*Manual for Complex Litig.* (4th ed. 2004) § 21.24...........................................................20

## RULES

Fed. R. Civ. P. 23 ..........................................................2, 3, 8, 9, 10, 12, 13, 14, 15, 16

1    **I.**        **INTRODUCTION**

2            This case is ideal for class certification because it presents a binary legal question

3    applicable to thousands of California consumers:  *Do the protections of insurance code sections*

4    *10113.71 and 10113.72 apply to <u>all</u> of Defendant's California policies in force on or after*

5    *1/1/2013?*  Plaintiff says 'yes.'  Defendant says 'no:' that the Statutes apply only to policies *issued*

6    on or after 1/1/2013. Setting aside the ultimate merits, the question and answer is the same for the

7    whole class, meaning that only one trial is necessary, not hundreds of mini trials.

8            In fact, we will never need a trial here because the applicability of Sections 10113.71 and

9    10113.72 ("The Statutes") is a legal question that will be decided on summary judgment.  Indeed,

10   this Honorable Court has already answered the main legal question with a "yes" when it mostly

11   denied Defendant's Motion to Dismiss and joined the other California Courts to confirm that The

12   Statutes *do* apply to pre-2013 policies.  *See* Order Granting in Part and Denying in Part Motion to

13   Dismiss or Stay ("MTD Order"), ECF No. 41.  It is hard to imagine a kind of case better suited for

14   class certification under the circumstances.

15           More specifically:  before an insurer can lapse or terminate a life insurance policy for non-

16   payment of premium, the insurer must provide three important safeguards: (1) a written provision

17   for a grace period "contained" in the policy, and an actual grace period in practice, "of not less

18   than 60 days from the premium due date," along with a statement that "the policy shall remain in

19   force during the grace period;" (2) 30 days prior written notice "of pending lapse and termination,"

20   sent by first class mail to the policy owner and his or her designee; and (3) an annual opportunity

21   to designate said designee, i.e. a third party to receive important notices. Cal. Ins. Code §§ 10113.71,

22   10113.72 ("The Statutes"). Importantly, and consistently with California common law regarding

23   the importance of notice, an insurer may not lapse or terminate a policy before it fully and *strictly*

24   complies with these Statutes.  *Id.*   Attempted terminations are automatically ineffective –

25   substantial compliance will not suffice.  *Id.*

26           It is undisputed that Defendant failed to provide these protections to the Siino family.  And

27   the Siinos are not alone. On or after January 1, 2013, Defendant illegally terminated over 500 life

28   insurance policies for non-payment of premium without first providing the protections of the

Statutes.  To its credit, Defendant admits this. Defendant's main argument was that the Statutes do not apply to policies issued prior to 2013, when the Statutes were enacted, even if the policies remained in effect (including by being renewed) in or after 2013.  We already know that Defendant is wrong.  *See* MTD Order, ECF No. 41.  Plus, Defendant has admitted in discovery that, for a time, it was not complying with The Statutes even for policies issued *after* 1/1/2013.

Mrs. Siino and hundreds of others fit the common profile of having purchased or been the beneficiaries of Defendant's policies that were still in effect in or after 2013, and whose policies were lapsed or terminated by Defendant before Defendant complied with The Statutes.  Plaintiff filed this class action to remedy the illegal terminations.

Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent the following Class:

> All owners, or beneficiaries upon the death of an insured, of Defendant's individual life insurance policies issued or delivered in California and in force on or after January 1, 2013 where Defendant terminated the policies for non-payment of premium without first providing all of the following: a policy containing a 60-day grace period (and an actual 60-day grace period in practice); a 30-day notice of pending lapse and termination; and an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

All of Rule 23's requirements are satisfied.  There is no question that the class is sufficiently numerous.  It has at least 526 members (and growing).  We know who all the members are because Defendant ascertained them from its customer data and produced a spreadsheet in discovery listing all of them.

Also, the case has at least one common question of fact or law, which is all that is necessary to show "commonality" in the Ninth Circuit.  One common question also happens to be the most important one: *do The Statutes apply to the policies at issue?*

Plaintiff is also typical of the class she seeks to represent.  Defendant admits that it did not apply the Statutes to all policies that, like the Sinno policy, were in force after January 1, 2013 (even though they may have been issued prior).  And as Defendant also admitted in discovery, it then lapsed and terminated the Siino policy as it did hundreds of others. This harmed policy holders and their beneficiaries like Mrs. Siino in common ways:  by jeopardizing or rescinding the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

policy. All class members share that Defendant illegally terminated their policies for non-payment of premium. Finally, Mrs. Siino will adequately protect the class' interests and has retained counsel with extensive relevant experience. Plaintiff has thus satisfied all of Rule 23(a)'s requirements.

Plaintiff's claims also satisfy at least two of Rule 23(b)'s requirements.  The claims satisfy Rule 23(b)(2)'s requirement for an injunctive or declaratory relief class because the party opposing the class – the insurance company here – has acted or refused to act on grounds that apply generally to the class.  Defendant has failed to apply The Statutes and provide its protections.

Plaintiff's claims also satisfy Rule 23 (b)(3)'s "predominance" and "superiority" prongs. The most important question in this case, i.e., the predominant one, can be resolved (and already has effectively been resolved) in one stroke: whether the Statutes apply to all policies in force as of or after Jan 1, 2013.  Class treatment is superior to hundreds of mini actions because some claims may be quickly surpassed by the costs and other burdens of litigation. Additionally, these claims involve rather nuanced legal issues, such as statutory interpretation issues, that the members are not familiar with.  Most members are likely unaware that they have legal claims and enforceable insurance policies.  In fact, the only thing they know is what Defendant erroneously told them: that their policies are no longer in force and that they have no rights to benefits under the terms. Certification would serve the important end of notifying class members of their important rights. Judicial efficiency and the possibility of inconsistent judgments further support certification. Plaintiff respectfully requests this Court grant this Motion.

## II.    FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS CERTIFICATION

### A.    The Statutes at Issue and Their Important Purpose.

The Statutes went into effect on January 1, 2013 (the "Effective Date") and apply to every life insurance policy in California in effect on or after that date. *See* Cal. Ins. Code § 10113.71-.72; Cal. Ins. Code § 41. The Statutes require, among other things, that life insurers provide: (1) a 60-day grace period in the policy contract and in practice (10113.71(a)); (2) 30 days written notice "of pending lapse and termination" prior to the effective termination date (10113.71(b)(1)); and (3) an

annual opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium (10113.72).  *See also Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870, 2018 WL 3357458, at *2 (C.D. Cal. May 1, 2018); *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1028 (S.D. Cal. 2019).

These Statutes serve a vital public purpose:

> [T]he bill provides consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit. Under existing law, individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed (even if they have been paying premiums on time for many years) . . . Therefore, the protections provided by AB 1747 are intended to make sure policyholders have sufficient warning that their premium may lapse due to nonpayment.

Assembly Committee on Insurance, AB 1747 (Feuer), Hearing May 2, 2012, attached as Ex. 1 to the Declaration of Craig Nicholas ("Nicholas Decl.") at pp. 31-32; and *see* Declaration of Roy Prescott Cole (confirming same along with intent that Statutes would apply to existing policies issued prior to 2013 but remaining in effect thereafter to address a legitimate concern with the loss of coverage to seniors and the disabled), attached as Ex. 2 to the Nicholas Decl.

**B.     The Statutes Mandate Strict Compliance.  Failure to Comply Renders Any Attempted Termination Null & Void.**

California long ago mandated *strict* compliance with procedural and statutory notice requirements before allowing an insurance company to terminate a policy. *See Mackey v. Bristol West Ins. Services of CA, Inc.,* 105 Cal.App.4th 1247, 1258 (2003) ("Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation."); *Lee v. Industrial Indemn. Co., Inc.*, 177 Cal.App.3d 921, 924 (1986) ("strict compliance with the terms of contractual requirements for notice of cancellation is essential to effect a valid policy cancellation"); *Nat. Auto. & Cas. Ins. Co. v. Cal. Cas. Ins. Co.*, 139 Cal.App.3d 336, 341 (1983). The Legislature built this strict compliance – these conditions precedent - right into these statutes.  Cal. Ins. Code, §§ 10113.71(b)(1) and 10113.72(c). For example, section 10113.72 expressly states that "*[n]o individual life insurance policy shall lapse or be terminated* for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or

persons designated. . . ." Similarly, section 10113.71(b)(1) states that lapse and termination "*shall not be effective* unless [notice is] mailed by the insurer to the named policy owner [and designee] . . . at least 30 days prior to the effective date of termination." Accord *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1028 (S.D. Cal. 2019) ("Defendant was required to comply with such requirements before terminating the Policies.").   Stated differently, there is nothing that an individual policy owner (or class member) can do, or not do, to affect Defendant's liability here.[1]

### C.    Plaintiff Pamela Sinno's Policy and the Purported Termination.

Plaintiff Pamela Siino and her husband Salvatore are long-time schoolteachers in Northern California. Decl. of Pamela Siino ("Siino Decl.") ¶ 2.  They have two small children.  *Id.*   In about 2010, Mrs. Siino purchased a $100,000 term life insurance policy from Defendant (the "Policy" or "Subject Policy") to protect her family in the event of her passing.  *Id.* at ¶ 3, Ex. A (the policy). She is the insured and the policyowner.  *Id.* at Ex. A.

Plaintiff stayed current on the policy and faithfully paid the premium every year between 2010 and 2017, well beyond the enacting of The Statutes in 2013. *See* Sinno Decl., ¶ 4. However, at one point Defendant stopped sending the Siino family notices or bills of any kind regarding this policy.  *Id*. After Defendant failed to send Plaintiff a bill or notice for the premium due January 26, 2018, that premium was missed.   *Id*.  Defendant lapsed the policy on February 26, i.e., 31 days after the premium was due.  *Id.*; *see also* Nicholas Decl., Ex. 3 (Defendant's form notice confirms the lapse).  At no time did Plaintiff receive any prior notice from Defendant regarding the premium due, nor did Defendant send an appropriate lapse or termination notice. Siino Decl., ¶¶ 6-7.

---

[1] The requirement of strict compliance with California notice laws is by no means unique to the insurance industry.  For example, strict notice compliance is required before a landlord can evict a tenant for nonpayment of rent.  *Liebovich v. Shahrokhkhany*, 56 Cal. App. 4th 511, 513 (Cal. App. 2d Dist. 1997).  A bank must strictly comply with statutory notice requirements before it can foreclose on its borrower's home for nonpayment of the mortgage. *Anderson v. Heart Fed. Sav. & Loan Assn.*, 208 Cal. App. 3d 202, 211 (Cal. App. 3d Dist. 1989) ("The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid").   Nor is California the only state that requires strict compliance with its notice provisions before letting an insurer lapse a life insurance policy for nonpayment of premium. *Halberstam as Tr. of Zupnick Fam. Tr. 2008 B v. Allianz Life Ins. Co. of N.A.*, 349 F. Supp. 3d 164, 170 (E.D.N.Y. 2018) (applying New York Law and holding: "the grace notice was legally invalid, and thus the policy did not lapse").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1       Sometime before March of 2018, Mr. Siino reached out to Defendant to pay the premium

2  on Plaintiff's Policy but was informed that Defendant had already terminated the Policy.  Sinno

3  Decl., ¶ 5. Defendant also said Plaintiff would have to apply for reinstatement.  *Id.*  The Siinos

4  would also have to pay back all missed premiums, plus interest.   Nicholas Decl., Ex. 4 (30(b)(6)

5  Depo. Tr.) at 65:17-66:4; 67:9-18 (Defendant's Rule 30(b)(6) representative confirms the

6  requirement); Siino Decl., Ex. A at p. 8 (reinstatement provision of the policy).  In other words,

7  Defendant required Plaintiff to pay money (premiums) for times when Defendant knew, and

8  insisted, she and her family had no insurance coverage.

9       At no time in or since 2013 did Defendant advise Plaintiff of her right to designate another

10  recipient to receive important policy notices, of her right to a 30-day notice prior to any effective

11  lapse or termination, or of her right to a 60-day grace period.   Siino Decl., ¶¶ 6-7.  Defendant

12  admits that it did not provide the secondary designation right.  Nicholas Decl., Ex. 4 (30(b)(6)

13  Depo. Tr.) at 41:25-42:14 (testimony of the defendant via Rule 30(b)(6) representative).

14       As for the grace period, the Siino policy, which is a common form, contains an express 31-

15  day grace period provision.  Siino Decl., Ex. A at p. 8; Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.)

16  at 62:12-64:10 (Vice President David Schimmel confirms the form nature of the policies).[2]  No

17  policy owner of any policy of any kind issued by Foresters prior to January 1, 2013 has been

18  advised that the policy has or had a 60-day contractual grace period. Nicholas Decl., Ex. 4

19  (30(b)(6) Depo. Tr.) at 39:16-21. Indeed, Defendant continued to use the same form with the 31-

20  day grace period in it even *after* enactment of The Statutes, i.e., after 1/1/2013.  Nicholas Decl.,

21  Ex. 5 (Schimmel Depo. Tr.) at 68:10-69:9, 163:21-164:2. Also, Defendant has been telling class

22  members in written notices, even after Plaintiff sued, that they had only a 31-day grace period.  *See*

23  Nicholas Decl., Ex. 3 (notice to policy owners erroneously informs them they only have a 31-day

24  grace); Nicholas Decl., Ex. 10 ("Premium Due" notice references 31-day grace period on the

---

25  [2]  The insurance industry must use common forms in California because the Insurance
26  Commissioner must approve all insurance contracts sold in California.  Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 62:12-64:10. Foresters, like very insurance company, submits standard
27  forms for approval, and then once approved, is able to sell those approved products to customers like the Siinos.  *Id.*  Foresters letters or notices to its insureds are also standardized forms and
28  templates. Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 82:3-19.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    second page); Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 77:2-78:4, 79:14-23 (Defendant

2    confirms that the erroneous notices are still going out today).   In short, Plaintiff contends that

3    Defendant did not comply with The Statutes.

4           **D.     Defendant's Procedures Relating to Pre-2013 Policies.**

5           Defendant does not dispute the core facts. Instead, its position was – as stated in its Motion

6    to Dismiss - it need not comply with the Statutes' requirements for policies, like the Siino policy,

7    originally issued prior to 2013. *See also* Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to

8    Rog 7); Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 48:11-49:15.   Defendant claims that it

9    might have provided *some* of The Statutes' protections to *some* policies (e.g., that it was giving 60-

10   day grace periods, in practice, on particular products like universal life policies).   *See, e.g.,*

11   Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to Rog 7).   But there is no question that

12   Defendant did not provide all the protections to all policies in force as of 1/1/2013 – particularly

13   those policies issued before 1/1/2013.   Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to

14   Rog 7); Nicholas Decl., Ex. 4 (30(b)(6) Depo. Tr.) at 41:25-42:14 (Foresters did not supply the

15   annual notice of secondary designee rights for policies issued before 2013); Nicholas Decl., Ex. 5

16   (Schimmel Depo. Tr.) at 55:6-13; Nicholas Decl., Ex. 4 (30(b)(6) Depo. Tr.) at 39:16-21.

17          Second, Defendant acknowledges that it needed to and should have applied The Statutes to,

18   at a minimum, policies issued <u>in 2013 and later</u>, but as it further admits, it failed to do that too.

19   Nicholas Decl., Ex. 6 (3d Suppl. Responses to Rog 7); Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.)

20   at 68:10-69:9.  Defendant has not explained why it failed to apply the Statutes to policies issued on

21   or after 1/1/2013, but because The Statutes are effectively strict liability statutes, the "why" does

22   not matter.    *See* Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 163:21-164:2 (unable to explain

23   why policies did not contain the mandatory 61-day grace period at least by 1/1/2013); 77:2-78:4.

24          Ultimately, it is undisputed that Defendant failed to provide all of the protections to all

25   policies in force on or after January 1, 2013, and furthermore, it is undisputed that we can ascertain

26   which policies did not receive all the required protections.[3]  Defendant identified 526 insurance

27   [3] Defendant is required to and does keep robust California customer and policy data, on individual

28   and aggregate levels, such as the number of policies issued, the amounts of premiums collected,

policies in the class, i.e. 526 policies in effect on or after 1/1/2013 which Defendant lapsed or terminated for nonpayment of premium without ever notifying the policy holder of the right to appoint a secondary designee for notice, without providing a policy containing a proper 60 day grace period, and/or without giving proper 30 days' notice of pending lapse or termination. *See* Nicholas Decl., Ex. 9 (Foresters' Suppl. Responses to Rog No. 19); Nicholas Decl., Ex. 8 (the class list attachment produced in Excel as FLIAC 110137).

Mrs. Siino alleges that the lapse and termination of her family's policy for nonpayment of premium was wrongful, as was the lapse and termination of those hundreds of other policies which stayed in effect after enactment of the Statutes (i.e., on or after January 1, 2013).   To present her claims on behalf of herself and the class, Plaintiff has retained counsel with extensive class action and insurance law experience. *See* Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 2-12; Decl. of Jack B. Winters, ¶¶ 2-11. Further, she has familiarized herself with the facts of the case and legal theories and has worked diligently to pursue the case and participate in discovery. Siino Decl., ¶ 8. Put simply, Plaintiff asks that this Court certify this case as a class action pursuant to Rule 23 and that she and her counsel be appointed to represent the class.

## III.   <u>ARGUMENT</u>

A class action may be certified if Fed. R. Civ. P. Rule 23(a) is satisfied and if one of Rule 23(b)'s several provisions is satisfied.  Fed. R. Civ. Proc. 23.  Plaintiff has satisfied each of the requirements of Rule 23(a).  She has also satisfied at least two of the prongs under Rule 23(b): Rule 23(b)(2)'s requirements for an injunctive or declaratory relief class as well as the requirements of Rule 23(b)(3).

---

the lapses, lapsation rates, and death claims.  Nicholas Decl., Ex. 7 (Drinkwater Depo. Tr.) at 85:10-21, 86:18-87:23, 88:20-89:8.  Defendant has to report much of this data to the California Insurance Commissioner on a regular basis.  See Nicholas Decl., Ex. 7 (Drinkwater Depo. Tr.) at 85:10-21, 86:18-87:23, 88:20-89:8. It was this data that enabled Foresters to ascertain the number of class members as well as which ones or how many received the various protections required by The Statutes, and which ones did not.  *See,* Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to Rog Nos. 14-18 reflecting the data); Nicholas Decl., Ex. 8 (the detailed class list).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### A.       Plaintiff's Putative Class Satisfies Each of Rule 23(a)'s Requirements.

Under Rule 23(a), the prerequisites for class certification are: (1) Numerosity: "the class is so numerous that joinder of all its members is impracticable"; (2) Commonality: "there are questions of law or fact common to the class"; (3) Typicality: "the claims of the [class representatives] are typical of the claims … of the class"; and (4) Adequacy of representation: the class representative(s) and class counsel "will fairly and adequately represent the interests of the class."[4] Fed. R. Civ. P. 23(a). Plaintiff has satisfied each prerequisite.

#### 1.       *Numerosity is easily satisfied here.*

To satisfy the numerosity requirement, joinder need not be impossible.  All that is required is that class members would suffer a strong litigation hardship or inconvenience if joinder were required. *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010). In general, this hardship is presumed, and numerosity is met, when a class includes at least 40 members. *Id*. at 651; *see In re Toys R Us – Delaware, Inc. v. Fair & Accurate Credit Transactions Act Litig*., 300 F.R.D 347, 367-368 (C.D. Cal. 2013) ("…classes of 40 or more are numerous enough").

Here, Defendant, like all insurance companies, keeps detailed electronic data about its policies, insureds, and beneficiaries.[5]  In discovery, for example, Defendant identified 526 policies in effect since the beginning of 2013 that it subsequently terminated for nonpayment of premium without first giving the policy owner all three of The Statutes' protections.  *See* Nicholas Decl., Ex. 8 (the class list); Nicholas Decl., Ex. 9 (Foresters' Interrogatory Response re:  class list). These

---

[4] Unlike some circuits, the Ninth Circuit does not have an express "ascertainability" requirement for certification under Rule 23. *See Briseno v. Con Agra Foods, Inc.* 844 F. 3d 1121, 1124-1125, fn. 4 (9th Cir. 2017). Such a requirement would be satisfied here regardless.

[5] Defendant maintains various electronic systems where it houses each of its life insurance policies and related information. Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 15:2-11. These systems warehouse information relating to the policies such as the status of each policy (i.e. in force versus lapsed), whether they were issued in California, the amount of the policies total benefits, and the names, addresses, and phone numbers of insureds. Nicholas Decl., Ex. 7 (Drinkwater Depo. Tr.) at 85:10-21; Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 32:25-33:8; 55:14-17; 106:25-107:3. In responding to Ms. Siino's Interrogatories, Foresters gathered information from these electronic systems and, among other things, produced a class list during discovery. Nicholas Decl., Ex. 8 (the class list); Nicholas Decl., Ex. 9 (Foresters' Interrogatory Response re:  class list). The information is also kept on a running basis for the Department of Insurance. Nicholas Decl., Ex. 7 (Drinkwater Depo. Tr.) at 86:18-89:8.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

numbers easily satisfy the numerosity requirement.

For some of these policies, the insured died, but Defendant wrongfully lapsed and terminated the policy for nonpayment of premium, and so Defendant has refused to pay the death benefit.  Nicholas Decl., Ex. 9 (Foresters' Interrogatory Response re:  class list); Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) at 29:5-22, 30:17-31:7.

> 2. *The claims of Plaintiff and her fellow class members share common questions of fact and law.*

Plaintiffs must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, plaintiffs must demonstrate at least one "common contention … capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Flo & Eddie Inc. v. Sirius XM Radio, Inc*., 2015 U.S. Dist. LEXIS 98656, at *29 (C.D. Cal. May 27, 2015) (citing *Dukes*, 564 U.S. at 338) ("class claims must depend on a common contention" and show that the "…determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Otherwise stated, a common question exists, uniting the class's claims for purposes of commonality, where a practice by the defendant "touch[es] and concern[s] all members of the class." *Dukes*, 564 U.S. 338, 359 fn. 10.

All questions of fact and law need not be common.  Instead, "shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies" suffice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The standard is not a particularly stringent one, even a "single common question" will do. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016).

One common legal question also happens to be the most important one here:  do the Statutes apply to *all* policies in effect on or after January 1, 2013, like Mrs. Siino's Policy. Factually, each class member's claim is premised on the same core conduct by Defendant – lapsing or terminating a policy after enactment of The Statutes, for the same reason (non-payment of premium), without providing all the same three protections enumerated in The Statutes (i.e., without providing a proper 60-day grace period, without providing proper 30 days' notice of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

termination, and/or without affording the opportunity to name a secondary notice designee.) *Cf*. Defendant's Motion to Dismiss, ECF No. 18 at 6:19-11:2 (arguing that The Statutes apply only policies issued "on or after January 1, 2013"); Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to Rog 7) (same); *but see* MTD Order, ECF No. 41 (denying, in part, Foresters' Motion to Dismiss). Plaintiff's claims, and those of every class member, hinge on the Court's answer to this common legal question and this common set of facts.

Moreover, when the Court confirms at the summary judgment stage what it already found at the Motion to Dismiss Stage – that the Statutes universally apply, then the breach necessary for each class member's contract and declaratory relief claims (along with derivative UCL claims) will necessarily be established. *See* Complaint, ECF No. 1 at pp. 14-21(Plaintiff's causes of action). As such, the truth or falsity of the central issue to the validity of each class members' claims can be determined in one stroke. *Dukes*, 564 U.S. 338 at 341. In other words, whether the Statutes apply to all policies in-force after 2013 but lapsed for non-payment "touch[es] and concern[s]" each member of the class. *Id.* at 359, fn. 10.

Several courts have found commonality in analogous contexts. Most recently, the Central District in *Bentley* addressed class certification of claims involving another life insurer's failure to apply the Statutes to all policies in existence on or after 1/1/2013. Like Defendant here, the insurer in *Bentley* took the position that it need not comply with the Statute's designee and notice to designee requirements for older policies. *Bentley*, 2018 WL 3357458, at *2 ("[I]f an insurer fails to give a policyholder an opportunity to name a designee, the notice [of cancelation] to the policyholder is not effective. . . . United maintains that it did not need to send out [designee] notices because Bentley's policy was issued before the Statutes' effective date."). Given the central importance of the Statutes, the Central District easily found commonality. *Id.* at *8 ("If the Court determines that United violated the Statutes by not providing adequate notice, then Plaintiff and class members will prevail. Otherwise, United will win.").

Also, in *Johnson v. Hartford Cas. Ins. Co*., 2017 WL 2224828, *12-13 (N.D. Cal. May 22, 2017), a class of property insurance policy owners challenged defendant-insurer's practice of depreciating certain covered costs, citing the California Insurance Code's restrictions on

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

depreciation under certain enumerated circumstances. *Id*. The Court certified the class, finding each of the class member's claims hinged on the same conduct, the legality of which could be decided based on the court's interpretation of the applicable Insurance Code provisions. *Id*.

Further examples of class certification in this context abound. See *Durant v. State Farm Mut. Auto. Ins. Co.*, 2017 U.S. Dist. LEXIS 34157, at **10-11 (D. Wash. March 9, 2017) (commonality found for class of auto insurance policy owners because defendant auto insurance provider denied each of their claims based on a uniform policy interpretation and therefore the legality of defendant's practice could be decided commonly); *Flo & Eddie*, 2015 U.S. Dist. LEXIS 98656 at **29-30 (C.D. Cal. May 27, 2015) (class of copyright owners certified in part because the conduct alleged against defendant– unlawful broadcasting of plaintiffs' songs without a license – as well as the core legal determination – whether the alleged broadcasting required prior owner authorization under California law – was common and could be decided for each class member uniformly); *Vaccarino v, Midland Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 88612 at **17-20 (C.D. Cal. June 17, 2003) (commonality satisfied because defendant's challenged practice of annuity bonus recoupment was applied to all class members in the same manner).

As in each of these analogous cases, Defendant's conduct and the legality of such conduct is common to Plaintiff and every other class member. Commonality exists here.

> 3. *Plaintiff's claims are typical because she is perfectly aligned with her putative class members.*

The purpose of Rule 23(a)(3)'s typicality requirement is "…to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-1176 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (typical claim arises from same course of events and relies on similar legal arguments). This is a lenient requirement. See *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). It is not necessary that the class-member claims and representative claims be "substantially identical." *Id*. All that is necessary is that representative claims be "reasonably coextensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff's claims are reasonably co-extensive with those of the class. Every class member

has the same complaint: that Defendant should have, but did not, or will not, give them all the protections required by the Statutes, including a policy with a 60-day grace, the right to designate, and a 30-day lapse notice to both the policy owner and the designee. And every class member has a right to complain for the same reasons: because ample written grace periods and ample warning of premium payment issues is not only required by law, but also important to avoid loss of benefits.  Every class member, in turn, is in danger of losing, or has already lost, the same thing: valuable life insurance, and for those where the insured has passed way, payment of policy benefits.  In short, every class member wants the same things for the same reasons.  Thus, Plaintiff's claims meet the Rule 23(a)(3) typicality requirement.

Once again, the *Bentley* class certification order is instructive. A named plaintiff who suffers the "same injury" as a result of the "same blanket policy" is typical of the class. *Bentley*, 2018 WL 3357458, at *9 (Further concluding that typicality exists where the named plaintiff, like "[a]ll the class members," "did not receive notices" and where the insurer simply "followed its general rule of not giving notice on policies purchased before 2013."), *citing Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569, at *9-10 (C.D. Cal. Apr. 29, 2013) (readily finding typicality in a case dealing with denied insurance coverage for a medical procedure based on the defendant-insurer's "blanket" policy determination that the requested procedure was "experimental" and therefore not covered). Typicality exists here.

### 4.    Plaintiff is an adequate representative.

Rule 23(a)(4)'s adequacy requirement mandates that a representative plaintiff "fairly and adequately protect the interests of the class." See *Boyd v. Bank of Am. Corp.,* 300 F.R.D 431, 438 (C.D. Cal. 2014). Here, a plaintiff must merely show that his/her interests are not antagonistic to those of the class and that she will prosecute the action vigorously through qualified and competent counsel. See *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Plaintiff's fundamental objective in this litigation is to obtain a ruling, through declaratory relief or otherwise, that the Statutes apply to *all* policies in force since the Statutes became effective (Jan. 1, 2013).  *See* Complaint, ECF No. 1 (First Cause of Action for Declaratory Relief).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

If Plaintiff prevails on this central issue, she and all class members benefit. If she does not, her claims, and those of the other class members, fail for the same reasons.

Plaintiff has every incentive (including confirmation of $100,000 in life insurance coverage to protect her family) to vigorously pursue her and the class' claim on their mutual, collective behalf. And Ms. Siino has no conflicts with the other members of the proposed class. Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15.

Moreover, Plaintiff has acknowledged her duties as a class representative, including the duty to put the interests of the class ahead of her own and to act as a champion for the class. Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15.   She has fulfilled the promises she made to adequately represent the class. She has familiarized herself with the facts and law relevant to this lawsuit and has participated extensively in this matter. Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15. She has been deposed.   Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15.   Her claims caused her husband to be deposed.  Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15.  She also hired attorneys very competent in the relevant areas of the law – who have years of collective experience in the insurance litigation and class action context and have successfully resolved numerous class and other actions through judgment, settlement, and trial. Siino Decl., ¶ 8; Nicholas Decl., ¶¶ 14-15; Winters Decl.

Both Mrs. Siino and her counsel are adequate.  Considering the above, pursuant to Fed. R. Civ. Proc. 23(g), Plaintiff additionally requests that the Court appoint her counsel Nicholas & Tomasevic, LLP and Winters & Associates as class counsel.

**B.    Plaintiff's Claims Also Satisfy at Least Two Provisions of Rule 23(b).**

In addition to all of Rule 23(a)'s requirements, Plaintiff's claims satisfy the requirements of both 23(b)(2) and 23(b)(3).

*1.    Plaintiff Has Satisfied the Requirements for a Declaratory or Injunctive Relief Class under Rule 23(b)(2).*

A class action is proper where the party against whom relief is sought has acted (or refused to act) on grounds generally applicable to a class of persons, thereby making appropriate declaratory or injunctive relief with respect to the class as a whole. Fed. R. Civ. Proc.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

23(b)(2).[6]   Grounds "generally applicable to a class" does not mean, however, that every single class member must have been injured or aggrieved in the same way by the defendant's conduct. It is sufficient if defendant has adopted a pattern of activity that is likely to be the same as to all members of the class. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 52, 63-64 (3d Cir. 1994); *see also* Adv. Comm. Note (1966) 39 F.R.D. 98, 102; *Brown v. Kelly*, 609 F3d 467, 477, fn. 8 (2d Cir. 2010) (collecting cases).  Specifically, certification under 23(b)(2) is available when Plaintiffs are seeking a declaration or injunction with respect to their rights under an insurance contract. *See, e.g., Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 427 (6th Cir. 2012).

Here, Defendant has (wrongfully) terminated life insurance policies after failing to provide all the key protections mandated by the Statutes, including sufficient grace periods, sufficient notice of lapse, and the opportunity to designate third parties to receive important notices. Defendant's policy terminations are a common "pattern of activity" that continues today. Nicholas Decl., Ex. 5 (Schimmel Depo. Tr.) 77:7-23, 79:14-80:20, 97:18-98:6 (Defendant *still* telling California term life insurance customers that they only have a 31-day grace period).

Plaintiff has, since the beginning of the case, sought a declaration that these terminations, and Defendant's interpretation of the Statutes, is indeed improper.  Plaintiff also seeks a declaration or injunction acknowledging the continued viability of these (wrongfully) terminated policies and requiring Defendant to provide the notices and rights mandated by the Statutes to the extent it is still not doing so by the time of judgment.  Such relief[7] is appropriate for the class as a

---

[6] Plaintiff's first two counts in her complaint, ECF No. 1, are for "Declaratory Relief or Judgment."

[7] More specifically, Plaintiff will ask for a declaration, injunction, or equitable relief requiring Defendant to provide class members with the option to either (1) acknowledge or revive their terminated policies at no cost, (2) receive a return of all past premiums paid (which Defendant tracks and reports to the Insurance Commissioner) with legal interest; or (3) receive the value of the lost Policy as of date of termination.  In other words, every policy has an objectively determinative value at any point in time, that is tracked for purposes of maintaining state-required reserves and for reinsurance.  *See Caminetti v. Manierre*, 23 Cal. 2d 94 (1943) (discussing appropriate remedies for wrongful repudiation or termination of insurance contracts, including value at termination); *Korbholz v. Great-W. Life & Annuity Ins. Co.*, 03-03792 JSW, 2009 WL 159869, at *2 (N.D. Cal. Jan. 20, 2009) (same); Nicholas Decl., Ex. 4 (30(b)(6) Depo. Tr.) at 62:18-63:17 (Defendant discusses maintenance of a reserve value).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    whole because Defendant has terminated all of these policies for the same reason.  Certification

2    under Rule 23(b)(2) is, therefore, appropriate.

3              2.    *Plaintiff's claims also satisfy Rule 23(b)(3)'s "Predominance" and*
                     *"Superiority" Requirements.*

4

5         Certification under Rule 23(b)(3) is also appropriate here to return monies to the class, like

6    the insurance policy benefits that Defendant has wrongfully withheld from the class members who

7    have policies where the insured died after termination.   To achieve certification under Rule

8    23(b)(3), there must be "questions of law or fact common to the members that predominate over

9    any questions affecting only individual members" and a class proceeding must be "superior to

10   other available methods for fair and efficient adjudication of the controversy." See Fed. R. Civ.

11   Proc. 23(b)(3). The proposed class meets each requirement here.

12              a.    <u>Nearly every important factual and legal issue in this matter is
                      common among class members.   As such, common issues
                      predominate</u>.

13

14        Rule 23(b)(3)'s predominance test gauges "whether proposed classes are sufficiently

15   cohesive to warrant adjudication by representation…[and] focuses on the relationship between the

16   common and individual issues." *See Hanlon*, 150 F.3d at 1022. The test is satisfied when

17   "common questions present a significant aspect of the case and they can be resolved for all

18   members of the class in a single adjudication." *Id*. Establishing predominance "does not require

19   plaintiffs to prove that every element of a claim is subject to class-wide proof: they need only show

20   that common questions predominate over questions affecting only individual class members." *In

21   re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137946, at *67 (N.D. Cal.

22   Sep. 24, 2013). Predominance is readily established in a case like this where the class' failure to

23   win on a key question – here, whether the Statutes apply to all policies in force on or after January

24   1, 2013– "would end the case for one and for all." *Cf. Amgen Inc. v. Connecticut Ret. Plans & Tr.

25   Funds*, 568 U.S. 455, 468 (2013).

26        Courts routinely find predominance in cases involving company-wide practices or policies

27   alleged to be illegal. *See e.g. Bentley*, 2018 WL 3357458, at *11 (Predominance established where

28   "[t]he evidence shows that [insurer] has a uniform practice of not providing notice to policyholders

MEMORANDOM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

and their designees if they purchased their policies before the Statutes' effective date."); *Hahn v. Massage Envy Franchising, LLC*, No. 12CV153 DMS BGS, 2014 WL 5099373, at \*11-12 (S.D. Cal. Apr. 15, 2014) (finding predominance of common questions relating to a contractual forfeiture clause that the plaintiff alleged was illegal under Cal. Civ. Code section 1671); *Johnson v. Hartford Cas. Ins. Co.*, 2017 U.S. Dist. LEXIS 77482 at \*\*41-44 (N.D. Cal May 22, 2017) (predominance met in breach of insurance contract class action because "[Plaintiff's] claims revolve around [Defendant's] alleged failure to pay the amount it owes under its insurance contracts to the insured… These questions . . . can be resolved through the interpretation of one statute. . . ."); *Durant*, 2017 U.S. Dist. LEXIS 34157 at \*\*14-16 (predominance satisfied because the legality of defendant's uniform standard of denying claims); *Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at \*\*34-35 (N.D. Cal. Mar. 5, 2010) (common issues predominate where it is alleged that defendant's practice induces early insurance premium payments for all plaintiffs).

Common issues abound here and predominate over any individual inquiries.  As was true in *Bentley, Amgen Inc.* and the other cases listed above, the driving common question of applicability of the Statutes to class members' policies will effectively resolve this case. Plaintiff's claims challenge a common company practice or policy that she contends is illegal and results in damages which are set by statute for those who experienced a loss of their insured. *See* Cal. Ins. Code § 10111.

To prove Defendant's liability for breach of contract and to establish a right to declaratory relief (as well as derivative UCL liability), common evidence will be and already has been used to establish the following facts:

- It is undisputed that Defendant issued hundreds of life-insurance policies to potential class members prior to 2013, and thereafter, that remained in force on or after the start of 2013. *See* Nicholas Decl., Ex. 6 (Foresters' 3d Suppl. Responses to Rog Nos. 13, 16-18)

- Defendant did not provide all class members an opportunity to designate a third party to receive notices of lapse at any time in or after 2013. *Id*.

- As a matter of common practice or policy, Defendant did not provide everyone 30

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

days' notice of pending lapse and termination prior to the effective date of termination for these policies. *Id.*

- As a matter of common practice or policy, Defendant did not provide all class members with policies containing 60-day grace periods. *Id.*

- Despite the lack of these protections ensured by the Statutes, Defendant lapsed and terminated many policies in force as of or after January 1, 2013 for nonpayment of premiums. *Id.*

Whether Defendant's common behavior was proper requires a single analysis of the Statutes, and then a simple comparison to Defendant's electronic customer database (called "LIDP"), which will, in turn, determine the outcome of every class-member's claim.

Moreover, while it is not necessary to actually assess damages now for beneficiaries, that assessment will be uniform across the class. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat. Life Ins.*, 594 F.3d 1087, 1089 (9th Cir.2010). If the insured has passed, the quantum of damage will be the face amount of the policy required to be paid when an insured has died. *See* Cal. Ins. Code § 10111. Likewise, prejudgment interest is set by California statute and/or the policy itself and can be uniformly added to the withheld policy benefits. *See* Cal. Civ. Code § 3289 (setting prejudgment interest). The damage analysis is the straightforward arithmetic of adding up the policy values and the prejudgment interest from the date of death of the insured.  This analysis is applicable to all class members who experienced the death of an insured and it is directly tied to the liability (that is, the illegal behavior) Plaintiff is attempting to prove. In short, the most important issues here are common, i.e., the common issues predominate.

> b.    Class adjudication of this dispute is far superior to individual lawsuits.

Rule 23(b)(3)'s superiority requirement tests whether a class action is the most efficient and effective means of resolving the controversy. *Wolin*, 617 F.3d at 1175. Factors the parties and the Court must consider in assessing superiority include the class member's interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Ellsworth v. U.S. Bank, N.A.*, 2014 U.S. Dist. LEXIS 81646 at * 98 (N.D.Cal. June 13, 2014). The objective of the superiority analysis is to "focus on efficiency and economy so that appropriate cases may be adjudicated most profitably on a representative basis." *Id.*

Class treatment of this dispute is far superior to individual adjudication for a number of reasons. First, without class notice, most, and likely all, class members will never know they have a claim. Those concerned with life insurance benefits are usually the old, sick, or their grieving family members.  These groups either may not know the policy lapsed or may believe the policy lapsed but there is nothing that can be done to remedy that fact, i.e., they believe what their insurance company erroneously told them: that their policy *properly* lapsed.

The California Legislature recognized the vulnerability of the people meant to be protected by the Statutes, which was a main reason why California enacted the Statutes in the first place. *See* Nicholas Decl., Ex. 1 (Legislative History) at 31-32 (emphasizing that the Statutes provide needed consumer safeguards, especially for seniors, otherwise they can easily lose the critical protection of life insurance).

Additionally, the record is devoid of any other suits or claims against Defendant on this issue. *See* Nicholas Decl., ¶ 16.  This suggests that individual suits are perhaps not a viable alternative to class treatment and that class adjudication will not disrupt any other ongoing proceedings covering the same subject matter. *See e.g. Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079 at *46 (C.D. Cal. Feb. 8, 2007); *Johnson*, 2017 U.S. Dist. LEXIS 77482 at **47-48.

Finally, litigating the class' claims through one action in a single forum is the sensible way to proceed in terms of both judicial efficiency and equity. As discussed throughout this Motion, the factual and legal bases for Plaintiff's claims are shared by each class member and can be managed and decided in "one stroke" by the Court – likely on a motion for summary judgment. Multiple courts deciding identical claims about the same statutes across various forums is a misuse of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

judicial, party, and attorney resources. It also risks inconsistent judgments. These additional factors further support superiority. *See Vaccarino*, 2013 U.S. Dist. LEXIS 88612 at \*59; *Johnson*, 2017 U.S. Dist. LEXIS 77482 at \*\*47-48.

### C.    In the Alternative, the Court Could Certify An Issue Class Under Rule 23(c)(4).

Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  "Selectively used, this provision may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action." *Manual for Complex Litig.* (4th ed. 2004) § 21.24.

As an alternative to certification of this entire class as defined under Rule 23(b)(2) and/or 23(b)(3), the Court could certify merely the legal issue of whether the Statutes apply to Defendant's California life insurance policies issued prior to January 1, 2013, under Rule 23(c)(4). *Cf. Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (certifying class under Rule 23(c)(4) for liability determination). To avoid a failure of justice, the Court should do so if it decides not to certify the entirety of the Class under Rule 23(b)(2) or (b)(3) for any reason.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court certify Plaintiff's proposed class, appoint Plaintiff Pamela Siino as class representative, and appoint Nicholas & Tomasevic as well as Winters & Associates as Class Counsel.

Plaintiff also acknowledges that notice of the pendency of this case, along with an option to opt out, should be sent to class members after certification under Rule 23(b)(3).  Therefore, the Court should further order the parties to meet and confer over an appropriate notice to class members and to send same within 15 days of any Order granting this motion.  Alternatively, and also within 15 days of any Order granting this motion, the parties could notify the court of any disputes as to notice and present their competing notice versions via joint submission.

[*Signature of counsel appears on the following page.*]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Respectfully submitted:

DATED:   April 30, 2021

**NICHOLAS & TOMASEVIC, LLP**

By:      /s/ Alex Tomasevic
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION