Jodi K. Swick No. 228634
Allison Fernandez No. 272853
**McDOWELL HETHERINGTON LLP**
1 Kaiser Plaza, Suite 340
Oakland, CA 94612
Telephone:      510.628.2145
Facsimile:      510.628.2146
Email:       jodi.swick@mhllp.com
               allison.fernandez@mhllp.com

Thomas F.A. Hetherington Texas Bar No. 24007359*
Jarrett E. Ganer Texas Bar No. 24055520*
**McDOWELL HETHERINGTON LLP**
1001Fannin Street, Suite 2700
Houston, TX 77002
Telephone: 713-337-5580
Facsimile: 713-337-8850
Email: tom.hetherington@mhllp.com
          jarrett.ganer@mhllp.com
*appearing *Pro Hac Vice*

Attorneys for Defendant
FORESTERS LIFE INSURANCE AND ANNUITY COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| PAMELA SIINO, Individually and on Behalf of the Class,<br><br>          Plaintiff,<br><br>          v.<br><br>FORESTERS LIFE INSURANCE AND ANNUITY COMPANY, a New York Corporation,<br><br>          Defendant. | Case No. 4:20-cv-02904-JST<br><br>**District Judge**: *Honorable Jon S. Tigar*<br><br>**DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: July 15, 2021<br>Time: 2:00 p.m.<br>Location:  Courtroom 6, 2nd floor<br><br>Complaint Filed: April 28, 2020<br>Trial Date: None Set |

**Table of Contents**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................... 5

      A.   California Insurance Code Sections 10113.71 and 10113.72 ................................. 5

      B.   FLIAC Substantially Complied with the Statutes for California Issued
           Policies ................................................................................................... 5

      C.   Plaintiff's Policy Lapse Has Nothing to Do with the Statutes, as She Was
           Provided a Lapse Notice and a 60 Day Grace Period Beyond Her Paid
           Coverage Period ....................................................................................... 6

      D.   Pending Appeals Before the California Supreme Court and Ninth Circuit
           Court of Appeals Will Inform upon the Application of the Statutes to
           Plaintiff Siino and Others within the Proposed Class ...................................... 8

III.  LEGAL STANDARDS GOVERNING CLASS CERTIFICATION .......................... 9

IV.   ARGUMENT ............................................................................................. 9

      A.   Plaintiff Fails to Carry Her Rule 23(a)(2) Burden Because There Is No
           Commonality Amongst the Class Regarding Critical Elements of Plaintiff's
           Actual Pleaded Claims. ............................................................................. 9

      B.   Plaintiff Fails to Carry Her Rule 23(b)(3) Burden Because Individualized
           Factual and Legal Issues Predominate Over Whether the Statutes Apply ............ 12

           1.   500+ Mini-Trials Will Be Necessary to Determine Performance,
                Breach, Causation, and Damages .......................................................... 13

           2.   Individualized Fact Issues Predominate Due to the Numerous Policy
                Types and Policy Forms Included Within Plaintiff's Proposed Class ........ 16

           3.   Individualized Legal Issues Predominate Because Plaintiff's
                Proposed Class Implicates the Laws of a Third of the United States
                and England .................................................................................... 17

           4.   Many Potential Claims are Time Barred and Individualized Inquiries
                May Predominate FLIAC's Statute of Limitations and Laches
                Defenses ......................................................................................... 17

      C.   Plaintiff Fails to Carry Her Burden Under Rule 23(a)(2) or 23(b)(3) to
           Proffer a Mechanism for Assessing Harm and Damages on a Classwide
           Basis ..................................................................................................... 18

      D.   Plaintiff Fails to Carry Her Rule 23(a)(3) Burden of Showing that Her
           Claims Are Typical of the Class. ............................................................... 21

      E.   Plaintiff is an Inadequate Class Representative Due to Her Lack of
           Involvement with Her Policy or The Disputed Lapse .................................... 22

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

F.   Plaintiff Fails to Carry Her Rule 23(b)(3) Burden of Establishing that Class Certification is Superior to Other Available Methods .......................................... 22

G.   Rule 23(b)(2) Certification is Not Permitted As a Matter of Law Where Plaintiff Seeks Individualized Monetary Damages ................................................ 23

H.   "Issue Certification" Under Rule 23(c)(4) Is Not Appropriate Because it Would Not Materially Advance the Whole Litigation .......................................... 25

V.   CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Aberin v. Am. Honda Motor Co.*,
   No. 16-cv-04384-JST, 2021 WL 1320773 (N.D. Cal. Mar. 23, 2021).............................. 9, 15

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) ........................................................................................... 25

*Allen v. Protective Life Ins. Co. and Empire General Life Ins. Co.*,
   No. 1:20-cv-00530, 2020 WL 5878276 (E.D. Cal. Oct. 2, 2020) ...................................... 8

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)........................................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................... 12

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   No. 06cv02671 BTM (WMc), 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) .................. 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ........................................ 20

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994)................................................................................................. 24

*Bennett v. Reliastar Life Ins. Co.*,
   No. CV 20-6529 PA (KSx), 2020 WL 5835324 (C.D. Cal. Sept. 23, 2020)........................ 1

*Bentley v. United of Omaha Life Ins. Co.* (summary judgment order),
   371 F. Supp. 3d 723 (C.D. Cal. 2019) ............................................................................... 8

*Bentley v. United of Omaha Life Ins. Co.* (class certification order),
   No. CV 15-7870-DMG (AJWx) 2018 WL 3357458 ........................................................ 13

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ......................................................................................... 16

*Brown v. Kelly*,
   609 F.3d 467 fn. 8 (2d Cir. 2010) .................................................................................... 24

*Campion v. Old Republic Home Prot. Co.*,
   272 F.R.D. 517 (S.D. Cal. 2011) ................................................................................. 11, 16

*Castano v. The American Tobacco Company*,
   84 F.3d at 750.................................................................................................................. 25

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) ..................................................................................... 24

*Chowning v. Kohl's Dept. Stores, Inc.*,
   733 F. App'x 404 (9th Cir. 2018) ..................................................................................... 20

*Clark v. Transamerica Life Ins. Co.*,
  No. 2:20-cv-00539-JAM-DB, 2020 WL 51410295 (E.D. Cal. Aug. 31, 2020) ...................... 1

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006) ...................................................................................... 18

*Comcast v. Behrend*,
  569 U.S. 27 (2012) ............................................................................................... 12, 18

*Cooper v. S. Co.*,
  390 F.3d 695 (11th Cir. 2004) ..................................................................................... 25

*Dietz v. Comcast Corp.*,
  No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ............................... 11

*Doyle v. Chrysler Grp., LLC*,
  663 F. App'x 576 (9th Cir. 2016) ................................................................................. 19

*E.D.C. Technologies, Inc. v. Seidel*,
  216 F.Supp.3d 1012 (N.D. Cal. 2016) ........................................................................... 10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................... 9, 21

*Erreca v. Western States Life Ins. Co.*
  (1942) 19 C2d 388 ...................................................................................................... 20

*Fox Test Prep v. Facebook, Inc.*,
  588 F. App'x 733 (9th Cir. 2014) ................................................................................. 22

*Gold v. Midland Credit Mgmt., Inc.*,
  306 F.R.D. 623 (N.D. Cal. 2014) .................................................................................. 24

*Gonzales v. Comcast Corp.*,
  No. 10-CV-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ............................ 21

*Gooch v. Life Inv'rs Inso. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ....................................................................................... 24

*Grundstrom v. Wilco Life Ins. Co.*,
  No. 20-cv-03445, 2020 WL 6873645 (N.D. Cal. Oct. 13, 2020) ....................................... 8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ....................................................................................... 21

*In re Facebook, Inc., PPC Advert. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012) .................................................................................. 22

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ....................................................................................... 25

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  299 F.R.D. 555 (E.D. Tenn. 2014) ................................................................................ 24

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ...................................................................................... 18

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ............................................................................................. 20

*Kelley v. Colonial Penn Life Ins. Co.*,
  No. 2:20-cv-03348, 2020 WL 6150922 (C.D. Cal. July 13, 2020) ........................................ 8

*Kline v. Coldwell, Banker & Co.*,
  508 F.2d 226 (9th Cir. 1974) ............................................................................................. 22

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ...................................................................................................... 10

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017) ........................................................................................... 19

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013) ............................................................................................. 18

*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) ................................................................................. 20

*Magallon v. Vital Recovery Servs., LLC.*,
  No. 16CV02971 JAH-BLM, 2018 WL 1336291 (S.D. Cal. Mar. 15, 2018) ......................... 24

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................... 16, 17, 24

*McCurley v. Royal Seas Cruises, Inc.*,
  331 F.R.D. 142 (S.D. Cal. 2019) ......................................................................................... 24

*McHugh v. Protective Life Ins.*,
  253 Cal. Rptr. 3d 780 (Cal. Ct. App. 2019) ........................................................................... 8

*McHugh v. Protective Life Ins.*,
  456 P.3d 933 (Cal. 2020) .................................................................................................... 1

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 S.Ct. 764 L.Ed.2d 604 (2007) ........................................................................ 10

*Microsoft Corp. v. Baker*,
  137 S. Ct. 1702 (2017) ....................................................................................................... 17

*Moriarty v. Am. Gen. Life Ins. Co.*,
  No. 3:17-CV-1709-BTM-WVG, 2020 WL 6938388(S.D. Cal. Nov. 25, 2020) ...... 3, 8, 12, 13

*Parrish v. National Football League Players Ass'n*,
  534 F.Supp.2d 1081 (N.D. Cal. 2007) ................................................................................. 18

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................................. 21

*Phan v. Transamerica Premier Life Ins. Co.*,
  No. 20-cv-03665, 2020 WL 5576358 (N.D. Cal. Sept. 17, 2020) ........................................... 8

*Philips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .......................................................................................................... 17

*Pitt v. Metropolitan Tower Life Ins. Co.*,
No. 3:20-cv-00694, 2020 WL 6158972 (S.D. Cal. Oct. 21, 2020)............................................8

*Reitman v. Champion Petfoods USA. Inc.*,
830 Fed.Appx. 880 (9th Cir. 2020)........................................................................................25

*Rouse v. Caruso*,
No. 2:06-CV-10961, 2013 WL 588916 (E.D. Mich. Jan. 7, 2013) ...................................24

*Schwab v. Comm'r*,
715 F.3d 1169 (9th Cir. 2013) .................................................................................................20

*Small v. Allianz Life Ins. Co. of N.Am.*,
No. 2:20-cv-01944, 2020 WL 5884757 (C.D. Cal. Sept. 4, 2020).........................................8

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016).................................................................................................................25

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ..............................................................................................................17

*Thomas v. State Farm Ins. Co.*,
424 F. Supp. 3d 1018 (S.D. Cal. 2019) .....................................................................................8

*Thomasson v. GC Servs. Ltd. P'ship*,
539 F. App'x 809 (9th Cir. 2013) ............................................................................................16

*Tidwell v. Thor Indus., Inc.*,
No. 05-CV-2088-L(BLM), 2007 WL 8083631 (S.D. Cal. Mar. 26, 2007) ...........................16

*Tucker v. Pacific Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) ...................................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)................................................................................................................12

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
327 F.R.D. 395 (E.D. Cal. 2018) ..............................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...........................................................................................................*passim*

*Werdebaugh v. Blue Diamond Growers*,
No. 12-CV-02724-LHK, 2014 U.S. Dist. LEXIS 173789 (N.D. Cal. Dec. 15,
2014) ...........................................................................................................................................19

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...................................................................................10

*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180 (9th Cir. 2001) ................................................................................17, 22, 23

**Statutes**

28 U.S.C. § 2201 .........................................................................................................................10

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Cal. Bus. & Prof. Code. § 17208 ........................................................................ 18

Cal. Civ. Code § 361 ........................................................................................... 18

Cal. Code Civ. Proc. § 337 .................................................................................. 18

Cal. Ins. Code § 10113.71 ............................................................................ *passim*

Cal. Ins. Code § 10113.72 ............................................................................ *passim*

CO Rev. Stat. § 13-80-101 .................................................................................. 18

**<u>Other Authorities</u>**

Rubenstein, 2 Newberg on Class Action 4:90 (5th ed. 2012) ...................................... 25

**<u>Rules</u>**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

## I.  INTRODUCTION

Life insurance policies require policyholders to pay premiums to receive coverage.  If premiums are not paid, a policy goes into a "grace period" during which a policyholder who wants to keep their policy can make premium payments to bring the policy current.  Policies lapse for many reasons including because the term of a policy, e.g. a 10 year term life period, concludes.  Effective January 1, 2013, California enacted statutes to help those policyholders who wanted to keep their policies but had missed a due date by (1) providing a longer grace period than what had been required under prior law and (2) providing for some additional notices not previously required.  Cal. Ins. Code §§ 10113.71–72 (the "Statutes").  Plaintiff asks the Court to certify a class of all Foresters Life Insurance and Annuity Company ("FLIAC")[1] policyholders whose policies lapsed since January 1, 2013, regardless of whether the policyholder purposefully lapsed, because she alleges FLIAC did not "strictly comply" with the Statutes.  Plaintiff has failed to carry her burden for several reasons.

Plaintiff has failed to carry her Rule 23(a) burden of establishing commonality.  Plaintiff asserts that the common legal question of whether the Statutes apply to the putative class members' policies will in "one stroke" decide liability for each of the 526 putative class members.[2]  Whether or not the Statutes apply, Plaintiff must still establish the elements of each of the claims she asserts.  Plaintiff's motion fails to establish a common question that will produce common *answers* that are apt to drive the resolution of these pleaded claims.  That is because policies lapse for many reasons, many lapses are purposeful and not disputed by the policy holder, and not all lapses cause harm.  Plaintiff cannot establish commonality amongst her legal claims—breach of contract and California Unfair Competition Law ("UCL")—including that the complained of conduct caused damages.  Plaintiff cannot establish commonality regarding her

---

[1] FLIAC was formerly known as First Investors Life Insurance Company. As of July 8, 2020, FLIAC was merged into Nassau Life Insurance Company, with Nassau Life Insurance Company as the sole surviving company. As used herein, FLIAC refers to Defendant and its predecessor and successor entities.

[2] Plaintiff's counsel has filed at least ten lawsuits claiming that life insurers failed to comply with the Statutes.  Three of these cases have pending appeals, the resolution of which will provide trial courts with significant guidance regarding the Statutes' applicability, particularly with respect to policies like Plaintiff's that were issued before the Statutes went into effect.  *See McHugh v. Protective Life Ins.*, 456 P.3d 933 (Cal. 2020) (appeal pending)*; see also Clark v. Transamerica Life Ins. Co.*, No. 2:20-cv-00539-JAM-DB, 2020 WL 51410295 (E.D. Cal. Aug. 31, 2020) (appeal pending); *see also Bennett v. Reliastar Life Ins. Co.*, No. CV 20-6529 PA (KSx), 2020 WL 5835324 (C.D. Cal. Sept. 23, 2020) (appeal pending).

declaratory judgment request because she cannot establish that that other putative class members dispute their policy status.

The one case under these Statutes to proceed through trial demonstrated that determining whether the Statutes apply will not drive the resolution of a case.  In *McHugh v. Protective Life Ins.*,[3] despite the court's determination that the Statutes applied, and despite evidence that the insurer failed to fully comply with the Statutes, the jury found for the insurer because there was no resulting harm.  Even if the Statutes apply to each of the 526 putative class members, the Court would still need to conduct 526 mini-trials to determine for each policy whether FLIAC failed to comply with its obligations, whether this failure caused harm to the policyholder, and the amount of such harm.  These elements cannot be established on a class basis.

<u>Plaintiff fails to carry her Rule 23(b)(3) burden because individualized factual and legal issues predominate over the question of whether the Statutes apply.</u>  First, and most importantly, are the factual and legal inquiries into breach, causation and resulting damages.  This requires an examination of why each policy lapsed, whether the lapse resulted from FLIAC's alleged noncompliance with the Statutes, whether the policyholder was harmed as a result, and the amount of any damages.  Life insurance policies lapse and terminate for many different reasons, varying significantly based on the policyholders' particular circumstances.  Many policies are voluntarily "lapsed" because the policyholder knowingly and intentionally stops paying premiums—the policyholder simply no longer wants or needs the policy and does not wish to pay the required premiums.  Other policies may lapse inadvertently because the policyholder forgets to pay or for some other reason does not remit premiums when due.

Determining whether a particular policy lapsed because of non-compliance with the Statutes and whether the lapse resulted in harm to a policyholder requires individualized inquiries that predominate over any common legal questions.  The "class data" spreadsheet attached to Plaintiff's motion demonstrates this.  Of the 115 putative class members that owned a 10 or 15-year term policy, fully half (58) of those policies lapsed after the expiration of the initial 10 or 15-year term (the point at which the policies become exponentially more expensive to maintain) with almost all of these lapses occurring exactly on the

---

[3] (Super. Ct. San Diego Cty., No. 37-2014-00019212-CU-IC-CTL).

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

expiration of the initial term.  *See infra*, B.1-4.  These are not lapses where the policyholder has been harmed by FLIAC allegedly failing to comply with the Statutes—these are policyholders affirmatively deciding that their expiring term policy has served its purpose and voluntarily "lapsing" their policy.

Similarly, non-named class members' policy files produced in response to Plaintiff's discovery requests demonstrate the predominance of individualized inquiries.  These policy files show policyholders affirmatively cancelling their policies which resulted in lapses.[4]  Plaintiff's own claims also show the need for individualized inquiries as her policy lapsed after she did not update her address with FLIAC and thus did not receive the premium due notice or lapse notices mailed by FLIAC to her last known address.  And the *McHugh* verdict exemplifies the need for individualized inquiry, as a jury's individualized inquiry led to a defense verdict despite application of the Statutes.  Thus, even if the Statutes universally apply, the Court would need to conduct 500+ mini-trials to determine breach, causation, and existence and quantum of damages for each class member.  Individualized issues therefore predominate, and the Court should deny certification.  A court in the Southern District of California recently noted these individualized issues in denying a virtually identical class certification motion.[5]

Second, Plaintiff's proposed class encompasses 13 different insurance products across five different product lines, and includes policies issued both before and after the Statutes' January 1, 2013 effective date.[6]  FLIAC used different procedures and notice forms based on product type, issue state, and these varied over time, necessitating further individualized inquiry.

Third, Plaintiff fails to meet her burden to show that the same law applies to each putative class member.  Not all of the policies or potential claims within the proposed class are governed by California law, as jurisdictions where policies were issued and delivered or where policyholders resided at the time of lapse account for nearly a third of the United States and England.  Individualized choice-of-law inquiries

---

[4] Only two insureds within Plaintiff's proposed class are known to have died subsequent to policy lapse.  In both cases, documents within FLIAC's policy files reveal that the policyholder affirmatively requested that their policy terminate.

[5] *Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-CV-1709-BTM-WVG, 2020 WL 6938388 (S.D. Cal. Nov. 25, 2020).

[6] Based on this Court's motion to dismiss order, the only path for policies issued before January 1, 2013 to be subject to the Statutes would be to establish that term policies were renewed within the State of California. ECF No. 41 at 9. This also requires individualized inquiry.

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

will be required to assess the applicability of the Statutes.

Finally, many of the putative class members' potential claims are facially time-barred, as their policies lapsed well beyond the statute of limitations.  Assessing which claims are time-barred or which may be subject to delayed discovery or equitable tolling requires further individualized inquiry.

<u>Plaintiff fails to carry her burden under Rule 23(a)(2) or Rule 23(b)(3) to proffer a mechanism for readily assessing harm and damages on a class basis.</u>  Plaintiff suggests that for policies where the insured has died, damages for the beneficiary class member can be based on the policy's death benefit.  But this only applies to two insureds under policies within the proposed class, and in both instances the insured affirmatively and voluntarily cancelled their policies before dying.  Where the insured is still alive, which is the case for the overwhelming majority of the proposed class, Plaintiff offers no mechanism for readily assessing the alleged damages.  Plaintiff's Complaint seeks money damages for the "value" of the lost insurance coverage for living policyholders.  But Plaintiff has offered no mechanism to assess such value, even for her own policy.  And regardless, the "value" of lapsed life insurance coverage depends on many individual factors, most notably the insured's current health.  This is not something that can be feasibly assessed across a class of more than 500 policyholders without significant individualized inquiry.

<u>Plaintiff fails to carry her Rule 23(a)(3) burden of showing that her claims are typical of the class.</u>  Plaintiff's own claims do not center on FLIAC's substantive compliance with the Statutes but rather on the fact that the premium due and lapse notices FLIAC mailed to her went to an ***old*** address and she never actually received them (there are factual disputes as to who is responsible for the failure to update her address).  Once her husband realized the policy lapsed, instead of accepting FLIAC's offer to come current with her premiums and put the policy back in-force, Plaintiff decided to get life insurance from a different company.  Not only has Plaintiff failed to demonstrate that claims like hers are typical of the class, FLIAC has unique defenses to her claim that she has been damaged by FLIAC's actions.

<u>Plaintiff fails to carry her Rule 23(a)(4) burden of showing that she is an adequate class representative.</u>  Plaintiff is an inadequate class representative because, among other reasons, she had no involvement with her insurance policy after it was issued, as her husband handled payment (and non-payment) of all premiums and all correspondence regarding her policy.

<u>Plaintiff fails to carry her Rule 23(b)(3) burden to establish superiority of class action.</u>  A

4

policyholder or beneficiary who actually believes their coverage was wrongfully lapsed has sufficient incentive to litigate individually. Because of this and the lack of manageability created by the individualized issues discussed above, a class action is not superior to individual litigation.

Plaintiff is not entitled to class certification under Rule 23(b)(2) as a matter of law. Plaintiff's declaratory judgment class certification is improper under Rule 23(b)(2) because she seeks individualized monetary relief. Plaintiff cannot pursue an injunction class certification because the Court has already ruled that she lacks standing to pursue an injunction.

Plaintiff's alternative request for issue class certification under Rule 23(c)(4) is unsupported. Even if the Rules provided for class certification without meeting the burdens of Rule 23(b)(3), doing so here would be inappropriate as it would not materially advance the litigation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. California Insurance Code Sections 10113.71 and 10113.72

Plaintiff's claims in this case hinge on her theory that FLIAC failed to comply with the Statutes, which went into effect on January 1, 2013—three years after FLIAC issued Plaintiff her term life insurance policy. The Statutes provide, in relevant part, that: (1) all life insurance policies "issued or delivered" in the State of California include a grace period of at least 60 days following a missed premium payment (Cal. Ins. Code § 10113.71(a)); (2) no life insurance policy may be "issued or delivered" in California until the applicant has been given the right to designate a third person to receive notice of pending lapse or termination of a policy for nonpayment of premium (Cal. Ins. Code § 10113.72(a)); (3) an insurer must "notify the policy owner annually of the right to change the written designation or designate one or more persons" (Cal. Ins. Code § 10113.72(b)); and (4) a notice of pending lapse or termination must be sent to the policy owner and their designee, if any, within 30 days of a missed premium payment and at least 30 days prior to termination. Cal. Ins. Codes §§ 10113.71(b)(1) and (3); 10113.72(c).

### B. FLIAC Substantially Complied with the Statutes for California Issued Policies

Following the enactment of the Statutes in 2013, FLIAC updated its internal procedures to comply with the Statutes' requirements. *See* Declaration of David Schimmel ("Schimmel Decl."), ¶ 3.[7] FLIAC

---

[7] FLIAC's universal life policies issued prior to 2013 already contained contractual grace periods of 60 days. *See* Schimmel Decl., ¶ 5; FLIAC's Response to Pl.'s Interrogatory No. 13.

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

updated its internal policy administration system to provide all policyholders of whole life, variable life, and term life insurance policies issued in California an effective 60-day grace period to bring past due premiums current before a final termination of the policy. *Id.*, ¶ 4. This change was applied regardless of a policy's issue date or contractual grace period provision, although FLIAC maintains that the Statutes only apply to policies "issued and delivered" in California after their January 1, 2013 effective date. *See* Declaration of Jarrett E. Ganer ("Ganer Decl."), Ex. 1 (Dep. of David Schimmel), at 54:12-15; *see also* Ganer Decl., Ex. 2 (30(b)(6) Dep. of David Schimmel) at 57:9-12, 59:1-3, 60:10-13; Schimmel Decl., ¶ 7.[8] As such, almost all of the potential class members, including Plaintiff, <u>actually</u> received a 60-day (or more) grace period. *See* ECF No. 70-5 (Ex. 3 to Nicholas Decl. in Support of Pl.'s Motion); *see also* Schimmel Decl., ¶ 4, 7. The mechanisms and forms through which FLIAC provided the notice and grace period varied by product type. *See* Schimmel Decl., ¶ 6. Moreover, it was FLIAC's regular practice to reinstate coverage without requiring evidence of insurability for at least 60 days from the date of missed premium payment. *Id.*, ¶ 7.

FLIAC also began providing applicants for insurance with notice of the right to designate a secondary addressee to receive notices at the time of application. *See* Schimmel Decl., ¶ 8. Additionally, policyholders with whole life, universal life, and variable life policies residing in California were provided with a notice regarding the right to designate along with their policy's annual statement. *See* Schimmel 30(b)(6) Dep. at 54:22-25; Schimmel Decl., ¶ 9; *see also* Ganer Decl., Ex. 3 (Notice Regarding the Right to Designate a Third Party Addressee sent to Salvatore Siino).

## C.  <u>Plaintiff's Policy Lapse Has Nothing to Do with the Statutes, as She Was Provided a Lapse Notice and a 60 Day Grace Period Beyond Her Paid Coverage Period</u>

In late 2009, Plaintiff Pamela Siino and her husband, non-party Salvatore Siino, each applied for life insurance with FLIAC. *See* Ganer Decl., Ex. 4 (Dep. of Salvatore Siino), at 9:7-10. The Siinos applied through Plaintiff's cousin Scott Ondek, who at the time was a life insurance agent with a broker-dealer then affiliated with FLIAC. *See* S. Siino Dep. at 9:21-25-10:1-7. In early 2010, FLIAC issued one policy

---

[8] As noted in FLIAC's Responses to Plaintiff's Interrogatories, Set One, there were a handful of policies, mostly issued outside of California, that received less than a 60 day grace period. *See* Ex. 6 to Pl.'s Mot. (ECF No. 70-8).

to Plaintiff and two policies to Mr. Siino.  *See* Schimmel Decl., ¶¶ 10-11.  Plaintiff's policy was a $100,000 face 20-year term policy, which required her to pay a $163.00 annual premium due on January 26 of each year to keep the policy in-force.  *See id.*, ¶ 10, Ex. 2.  After the expiration of the initial 20-year term, the policy could be kept in-force by paying exponentially increasing annual premiums that reach as high as $79,162.00 per year.  *Id.*, Ex. 2 at pp. 6-7.

From this point on, Plaintiff had no involvement with her policy, as her husband handled the sending and receipt of all correspondence related to the policy and the payment (or non-payment) of all premiums on the policy.  *See* Ganer Decl., Ex. 5 (Dep. of Pamela Siino), at 39:4-16, 45:6-19.  This included Mr. Siino handling several address changes.  *See* P. Siino Dep. at 45:6-19; S. Siino Dep. at 16:21-25, 17:1-7, 50:8-11.  Mr. Siino asserted that he typically sought to update his and Plaintiff's address by informing Plaintiff's cousin, and then later Austin Batista, who took over as the Siino's agent after Mr. Ondek changed careers.  *See* S. Siino Dep. at 16:21-25, 17:1-7, 48:13-20.

In 2015, the Siinos again moved.  While Mr. Siino submitted a valid change of address request for his policies, FLIAC rejected the change of address request submitted for Plaintiff's policy because it was not signed by Plaintiff. *See* Schimmel Decl., ¶ 13, Ex. 4.  Mr. Siino contends that he informed Mr. Batista of the address change and had relied upon Mr. Batista to update FLIAC regarding Plaintiff's address change.  *See* S. Siino Dep. at 48:13-20.  Regardless, the Siinos apparently did not receive any of the subsequent correspondence FLIAC sent regarding Plaintiff's policy, though they kept receiving correspondence on Mr. Siino's policies (including notifying of the right to designate a third-party to receive notice).  *See* Compl., ¶ 29; P. Siino Dep. at 51:9-20, 53:11-18, 54:6-15, 57:8-15.  Despite not receiving premium due notices on Plaintiff's policy, Mr. Siino submitted premium payments for Plaintiff's policy in both 2016 and 2017.  *See* S. Siino Dep. at 45:2-13.  But in 2018, neither Plaintiff nor Mr. Siino made a payment on Plaintiff's policy, and it lapsed.  *See* Schimmel Decl., ¶ 14.  FLIAC had mailed a premium due notice and a lapse notice which complied with the Statutes by providing Plaintiff with 61 days beyond her period of paid coverage to remit her overdue premium payment.  *See* ECF No. 70-5.  But Plaintiff claims she never received these notices because of the address issue. *See* P. Siino Dep. at 58:4-12.

About a year later,[9] Mr. Batista informed Mr. Siino that Plaintiff's policy had lapsed.  *See* Schimmel Decl., ¶ 16, Ex. 5.  FLIAC offered to reinstate her policy if she would come current on premiums.  *Id.*  Plaintiff never tendered to FLIAC any further premiums or otherwise requested to continue her coverage in-force.  *See id.*  Instead, Plaintiff applied for and received insurance coverage through another carrier.  *See* P. Siino Dep. at 65:8-19.  The Siinos both testified that they did this because they were dissatisfied with the customer service they had received from Mr. Batista in failing to update their address.  S. Siino Dep. at 62:2-25-63:1-17; P. Siino Dep. at 64:2-11.  In other words, given the fact that Plaintiff was alive, healthy, and insurable, the Siinos decided they would rather do business with another insurance carrier.  Their decision had nothing to do with the lapse notice FLIAC sent, which neither saw until preparing to file this lawsuit.  *See* P. Siino Dep. at 57:8-18; *see also* S. Siino Dep. at 58:9-25.

## D.      Pending Appeals Before the California Supreme Court and Ninth Circuit Court of Appeals Will Inform upon the Application of the Statutes to Putative Class Members

Several cases considering the applicability of the Statutes to pre-2013 policies are pending before the California Supreme Court and Ninth Circuit Court of Appeal.[10]  *See McHugh v. Protective Life Ins.*, 253 Cal. Rptr. 3d 780 (Cal. Ct. App. 2019), *review granted*, 456 P.3d 933 (Cal. 2020); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723 (C.D. Cal. 2019), *appeals docketed*, No. 20-55435 (9th Cir. Apr. 27, 2020) & No. 20-55466 (9th Cir. Apr. 29, 2020); *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018 (S.D. Cal. 2019), *appeal docketed*, No. 20-55231 (9th Cir. Mar. 2, 2020).  The California Supreme Court is set to hear oral argument on the fully briefed *McHugh* matter on June 2 and will decide whether the Legislature intended the Statutes to apply to life insurance policies issued before the Statutes' effective

---

[9] Plaintiff's motion contends that this contact took place before March <u>2018</u> [Pl.'s Mtn. at 6], but there is no evidence in the record to support this assertion. Pl.'s Mot. at 6. Mr. Siino's testimony and the evidentiary record reflects that this communication took place in <u>2019</u>. *See* Schimmel Decl., ¶ 17, Ex. 6.

[10] Considering the expected impact of these pending appeals on the viability of claimants such as Plaintiff to pursue claims, most cases filed by Plaintiff's counsel have been stayed.  *See Moriarty*, 2020 WL 6938388 (staying case during class certification stage); *see also Allen v. Protective Life Ins. Co. and Empire General Life Ins. Co.*, No. 1:20-cv-00530, 2020 WL 5878276 (E.D. Cal. Oct. 2, 2020); *see also Kelley v. Colonial Penn Life Ins. Co.*, No. 2:20-cv-03348, 2020 WL 6150922 (C.D. Cal. July 13, 2020); *see also Pitt v. Metropolitan Tower Life Ins. Co.*, No. 3:20-cv-00694, 2020 WL 6158972 (S.D. Cal. Oct. 21, 2020); *see also Small v. Allianz Life Ins. Co. of N.Am.*, No. 2:20-cv-01944, 2020 WL 5884757 (C.D. Cal. Sept. 4, 2020); *see also Phan v. Transamerica Premier Life Ins. Co.*, No. 20-cv-03665, 2020 WL 5576358 (N.D. Cal. Sept. 17, 2020); *see also Grundstrom v. Wilco Life Ins. Co.*, No. 20-cv-03445, 2020 WL 6873645 (N.D. Cal. Oct. 13, 2020).

DEFENDANT FORESTERS LIFE INSURANCE AND ANNUITY COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

date of January 1, 2013. Additionally, the Ninth Circuit Court of Appeals is expected to hear oral arguments for the *Bentley* and *Thomas* appeals in June 2021, which will likewise address the question of retroactive application of the Statutes, as well as prospective application of the Statutes through the so-called "renewal" principle.

## III.   LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

The party seeking class certification "bear[s] the burden of showing by a preponderance of the evidence that class certification is appropriate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) ("*Wal-Mart*"). When a plaintiff fails to carry this burden, class certification cannot be granted. *Id.* Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) ("The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23."). To prevail on her Motion, Plaintiff must establish by a preponderance of the evidence that Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements are met, and that at least one Rule 23(b) requirement is met. Fed. R. Civ. P. 23; *Aberin v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2021 WL 1320773 at *3 (N.D. Cal. Mar. 23, 2021) (Tigar, J.).

## IV.   ARGUMENT

### A.   Plaintiff Fails to Carry Her Rule 23(a)(2) Burden Because There Is No Commonality Amongst the Class Regarding Critical Elements of Plaintiff's Actual Pleaded Claims

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal-Mart*, 564 U.S. at 349. Properly interpreted, commonality requires that each of the putative class member's claims "must depend upon a common contention" and that common contention "must be of such a nature that is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential

to impede the generation of common answers." *Id.* (quotations omitted) (emphasis original).

Plaintiff attempts to overcome the lack of commonality across the putative class members by arguing that the Statutes impose a particularly draconian form of "strict liability" that results in premium-free evergreen life insurance coverage if an insurer fails in any way to precisely comply with the rigors of the Statutes. *See* Pl.'s Mot. at 4, 10. Putting aside the merits of this dubious reading of the Statutes,[11] Plaintiff has failed to carry her Rule 23(a)(2) burden because answering the common question she proposes—applicability of the Statutes—will not drive the resolution of the litigation. *See United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395 (E.D. Cal. 2018) (commonality is not satisfied merely because the class members "have all suffered a violation of the same provision of law") (*quoting Wal-Mart*, 564 U.S. at 350).

Whether or not the Statutes apply does not answer the critical question of whether the breach of contract or derivative UCL and declaratory judgment claims Plaintiff asserts can be adjudicated as a class. Nothing within the Statutes' plain text or the irrelevant legislative history appended to Plaintiff's Motion abrogates the fundamental elements of a breach of contract claim. Plaintiffs must still establish their own performance (*e.g.* payment of premiums for the coverage sought), the materiality of an insurer's breach (*e.g.* that the failure of an insurer to comply actually caused an adverse impact), or resulting harm (*e.g.* that the lapse actually harmed the policyholder). *See E.D.C. Technologies, Inc. v. Seidel*, 216 F.Supp.3d 1012, 1015 (N.D. Cal. 2016) (setting forth elements of breach of contract claim). The same is true of a UCL claim; class members must still show they were harmed by FLIAC's conduct to recover. *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013) ("The California Supreme Court has interpreted the UCL as requiring plaintiffs to have suffered economic injury 'as a result of' the unfair competition they allege.") *citing Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011). And a court only has jurisdiction to enter a declaratory judgment where there is "a case of actual controversy." 28

---

[11] Relevant to this motion, the "shall not be effective" and "no individual life insurance policy shall lapse or be terminated" language upon which Plaintiff's strict liability theory rests (Pl.'s Mot. at 5) applies only to the subsections of the Statutes describing the issuance of a lapse notice (Cal. Ins. Code §§ 10113.71(b)(1), 10113.72(c)). This type of language is not included in the subsections of the Statutes requiring annual notice of the right to designate, or mandating the inclusion of a particular lapse notice provision within a policy contract. Cal. Ins. Code §§ 10113.71(a), 10113.72(a)-(b). Thus, even under Plaintiff's theory, "strict liability" commonality would not apply to the entirety of the Statutes.

U.S.C. § 2201(a).  There is no justiciable case or controversy between FLIAC and putative class members who voluntarily lapsed their polices or whose policies lapsed for reasons unconnected to the Statutes. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (case or controversy must involve a dispute that is "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests").

Plaintiff's burden here is to establish commonality of questions that will provide *answers* that are apt to resolve the claims asserted.  *See Wal-Mart*, 564 U.S. at 349–50.  The one case litigated under the Statutes that has proceeded through trial demonstrates that determining that the Statutes apply does not produce a "one stroke" answer on liability.  In *McHugh,* the beneficiary challenged the insurer's denial of death benefits due to the policy's termination for nonpayment of premiums prior to the insured's death. *McHugh* (Super. Ct. San Diego Cty., No. 37-2014-00019212-CU-IC-CTL).  The court ruled on summary judgment that the Statutes "appl[ied] to a policy issued in 2005," but that a trial would be necessary to determine whether the defendant breached the contract.[12]  At trial, despite having not fully complied with the Statutes, the insurer offered evidence that the policyholder never paid his premium, never attempted to reinstate, and did not contact the insurer during the grace period provided.[13]  The jury reached a defense verdict, finding the insurer did not cause harm to the policyholder.[14]

Even if the Court were to determine that the Statutes apply to each putative class member's policy, answering Plaintiff's alleged "one stroke" question "yes" would not "drive the resolution of the litigation" because 500+ *McHugh*-type mini-trials would still be required as to breach, causation and injury in fact. Plaintiff's failure to show commonality for the key elements of her actual pleaded claims precludes a finding of commonality under Rule 23(a)(2).  *Wal-Mart*, 564 U.S. at 352 (class certification should be denied when it is "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question[s] of liability, causation, and damages"); *Dietz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, *6 (N.D. Cal. July 11, 2007) (denying

---

[12] Ganer Decl., Ex. 6 (*McHugh*, Jan. 5, 2017 Minute Order at 2-3).
[13] Ganer Decl., Ex. 7 (*McHugh*, Aug. 2, 2017 Protective Life Insurance Company's Opposition to Plaintiffs' Motion for JNOV, at 10-13).
[14] Ganer Decl., Ex. 8 (*McHugh*, Aug. 9, 2017 Judgment).

certification where "[i]t would be impossible to determine, on class-wide proof, whether all [plaintiffs] were harmed" by the defendant's alleged conduct); *see also Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) (predominance requirement could not be met where "causal link" between Defendant's alleged unlawful business practices and any harm suffered by class members "cannot be established on a class-wide basis").

**B.     Plaintiff Fails to Carry Her Rule 23(b)(3) Burden Because Individualized Factual and Legal Issues Predominate Over Whether the Statutes Apply**

The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a).  *See Comcast v. Behrend*, 569 U.S. 27, 34 (2012) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).  The predominance inquiry requires courts "to give careful scrutiny to the relationship between common and individual questions in a case.  An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

As discussed in the ensuing subsections, the individualized factual inquiries necessary to address the merits of particular class members' claims predominate over the proffered common question of whether the Statutes apply.  *See infra*, §§ B.1-4.  Indeed, the Southern District of California recently denied certification in a virtually identical case and the court expressed its concerns regarding the multitude of individualized factual issues that would need to be tried (as demonstrated by the claims of the named plaintiff), including:

> (1) whether [the defendant insurer] American General properly mailed Mr. Moriarty and Plaintiff a notice of termination letter, and whether Mr. Moriarty or Plaintiff received such a letter, (2) whether American General imposing an effective termination date fewer than 30 days after it mailed the notice of termination letter actually caused damage to Plaintiff, (3) whether Plaintiff had actual notice of a lapsed policy payment, and (4) whether Plaintiff would have been Mr. Moriarty's § 10113.72 designee.

*Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-CV-1709-BTM-WVG, 2020 WL 6938388, at *2 (S.D. Cal. Nov. 25, 2020).  The *Moriarty* court further noted that "[s]imilar individual factual issues will likely be present for each member of the putative class . . . " and that these individualized issues "may affect whether

the commonality requirement of Rule 23(a)(2) and predominance and superiority requirements of Rule 23(b)(3) can be met." *Id.*[15]  Class certification should similarly be denied here because individualized issues relating to breach, causation, harm and damages predominate.  This is because of (1) the myriad of individualized circumstances under which policies lapse and the impact of the lapse on the policyholder; (2) the numerous policy forms and products at issue; (3) the extensive choice of law analysis due to the multiple jurisdictions implicated by the proposed class; and (4) individualized statute of limitations issues.

### 1.  500+ Mini-Trials Will Be Necessary to Determine Performance, Breach, Causation, and Damages

Plaintiff asserts, without support, that "every class member wants the same thing for the same reasons." *See* Pl.'s Mot. at 18.  This presumes that every class member wanted to keep paying premiums to keep their policy in force but was somehow prevented from doing so due to FLIAC's failure to comply with the Statutes.  But Plaintiff wholly ignores the fact that life insurance policies lapse for reasons completely unrelated to the insurer's mailing of notices or the length of grace period provided.  Many policyholders choose to stop paying premiums and voluntarily lapse their policies.  For these policyholders, who have not performed their obligation to pay premiums to receive coverage, any failure by an insurer to comply with the Statutes was not material, and caused them no harm.  These policyholders have no legally viable claim and cannot be included within a proposed class.

Indeed, the *Bentley* class certification order to which Plaintiff cites actually supports *denying* class certification here because it demonstrates that an *individualized* policy file review is necessary to determine which policyholders voluntarily terminated their policies.  *Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at *6 (C.D. Cal., May 1, 2018).  *Bentley* certified a class of beneficiaries of 32 policies where the insured had died after a policy lapsed.  But the court expressly excluded beneficiaries of 11 policies that had been voluntarily lapsed.  While the individualized inquiries necessary to cull the class in *Bentley* may have been feasible with a class of 32, it is decidedly less practical in a class of 526.

---

[15] The *Moriarty* Court denied certification without prejudice and stayed the case pending the outcome in *McHugh*, given the central importance of the question of whether the Statutes apply to pre-2013 policies and the fact that the court would be bound by the California Supreme Court's decision. *Moriarty*, 2020 WL 6938388, at *2.

The evidence adduced in discovery to date shows that numerous putative class members voluntarily lapsed their policies for reasons unrelated to the Statutes.  There is evidence that substantial numbers of policies naturally expired at the end of their initial term.  *See* Schimmel Decl., ¶¶ 20-21.  There is evidence that policyholders affirmatively and intentionally lapsed their policies.  *See id*., ¶¶ 24-25.  And the record is far from complete; to fully determine why each policy lapsed, whether the lapse was caused by FLIAC's actions, and whether the policyholder or beneficiary suffered harm as a result would require the Court to review 526 policy files and potentially hear testimony from all 526 policyholders or beneficiaries.

a.     *Plaintiff's Class Data List Evidences Policies "Lapsing" Due to Expiration*

As its name implies, term life insurance provides life insurance protection for a specified period of time, often a 10, 15, or 20 year term.  *See* Schimmel Decl., ¶ 17.  At the end of this initial term, policies can sometimes be renewed but only at significantly higher premiums.  *See id*.  As a result, policyholders commonly voluntarily "lapse" their policies at the end of the initial term by choosing to not pay the significantly higher renewal premiums.  *See id*.  Even a cursory review of the data included within the "class list" attached to Plaintiffs' motion demonstrates that a substantial number of the lapses were not instances where valuable coverage was wrongfully lapsed, but were voluntary and natural terminations upon the expiration of the policies' initial terms.  ECF No. 70-10 (Nicholas Decl., Ex. 8); Schimmel Decl., ¶¶ 18-21.  Plaintiff's class data contains 86 examples of 10-year term policies, 40 of which "lapsed" shortly after the expiration of the initial 10-year term (with most lapsing exactly on the 10-year anniversary date).  *See id*., ¶ 20.  Likewise, the 29 lapses involving 15-year term products contained 18 that "lapsed" after the expiration of the initial term.  *Id*.  Thus, half of the 105 putative class members that owned a 10 or 15-year term policy "lapsed" after the initial term expired.  And this does not take into account policies that lapse as they near expiration, when insureds commonly seek new coverage.

None of the policyholders whose term policies expired naturally were harmed by FLIAC's lapse notice procedures, grace periods, or secondary designee notices.  An individualized inquiry will be necessary to adjudicate claims related to the Statutes.

b.     *The Only Two FLIAC Insureds Who Have Died After Policy Lapse Had Affirmatively Sought to Terminate Their Policies*

Beyond those that lapsed at the expiration of their initial terms, there are many other putative class

members whose policies lapsed because they were no longer wanted.  Of the 526 putative class members, only two insureds are known to have died after their policies lapsed for nonpayment of premium.  *See* Schimmel Decl., ¶ 22.  In both cases, the insureds affirmatively requested termination of their policies prior to lapse.[16]  *Id*., ¶¶ 24-25, Exs. 8, 9.  The insured under policy no. 196903 faxed FLIAC a letter stating: "[t]his is to state that I am cancelling this policy as of 5/15/2013."  *See id*., ¶ 24, Ex. 8.  The insured under policy nos. 610610 and 610663 had his insurance agent fax FLIAC a letter stating: "Please <u>STOP</u> pulling <u>ALL</u> premiums from existing bank account <u>immediately</u> . . . . as client doesn't want to pay <u>any</u> further premiums and is looking to surrender policies soon."  *See id*., ¶ 25, Ex. 9 (emphasis in original).  In compliance with their requests, once premiums were not paid on the due dates, FLIAC sent lapse notices and afforded the policyholders a 61-day grace period beyond their period of paid coverage.  *See id*., ¶ 26. There is no plausible argument that these policyholders or their beneficiaries were harmed by FLIAC's lapse procedures, regardless of whether the procedures complied with the Statutes (they did).

        c.     *Individualized Discovery and Testimony From Each of the 500+ Class Members Would Be Necessary to Determine Liability*

A more detailed review of the policy files for other policies will certainly show more examples of voluntary lapse.  But policyholders do not always expressly inform FLIAC of the reasons they stop paying premiums.  Often their needs change—children grow up, a divorce or business dissolution occurs, or any other of a number of individual circumstances—and the policyholders affirmatively elect to stop paying premiums and allow their policies to lapse.  *See* Schimmel Decl., ¶ 17.  For these, reviewing voluminous policy data and taking testimony from hundreds of policyholders will be required to determine why each policy lapsed.

\*\*\*\*\*

Individualized issues will dominate any inquiry into whether FLIAC's alleged non-compliance with the Statutes actually resulted in harm to any of the putative class members.  On that basis, class

---

[16] Documents related to these two policies were produced pursuant to Plaintiff's discovery requests. There are certainly other similar examples within the files for the remaining 500+ putative class members, but it is Plaintiff's burden of establishing that class certification is appropriate and not FLIAC's to disprove. *See Aberin*, 2021 WL 1320773, at \*3 (Tigar, J.).

certification should be denied. *See Thomasson v. GC Servs. Ltd. P'ship*, 539 F. App'x 809, 810 (9th Cir. 2013) (commonality requires significant proof that the entire class suffered a common injury); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (predominance not met "where an individualized case must be made for each member showing reliance"); *see also Campion*, 272 F.R.D. at 531–37 (predominance not met solely when a defendant employs a uniform policy because individualized inquiry is required to determine whether claims are wrongfully denied); *Tidwell v. Thor Indus., Inc.*, No. 05-CV-2088-L(BLM), 2007 WL 8083631, at *5 (S.D. Cal. Mar. 26, 2007) (certification improper when factual events and defenses are unique to each class member).

### 2. Individualized Fact Issues Predominate Due to the Numerous Policy Types and Policy Forms Included Within Plaintiff's Proposed Class

The 526 policies within Plaintiff's proposed class include 13 different insurance products issued across five different product lines: term, whole life, variable life, universal life, and variable universal life. *See* ECF No. 70-10 (Ex. 8 to Nicholas Decl.). Plaintiff's proposed class includes products issued both before and after the Statutes' January 1, 2013 effective date. *Id.* [17]

For the 384 term policies issued before January 1, 2013, an individualized inquiry is required to determine whether the policy actually "renewed" by paying annual premiums after that date. Notably, 55 (or nearly 15%) of these policies lapsed during 2013, which makes it unlikely that an annual premium was paid after January 1, 2013. *See id.* Further individualized inquiry would be required to determine whether the policies were actually "renewed" in California, and whether such renewal was compliant with any policy terms governing renewal.

Additionally, both the policy terms and conditions and FLIAC's policies and procedures for sending premium notices and lapse notices, as well as the contents thereof, varied based on product type. *See* Schimmel Decl., ¶ 6. As such, even with respect to FLIAC's internal procedures and form letters, there will not be commonality between the holders of different policy types. This further indicates that individual issues predominate. *See, e.g.*, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir.

---

[17] Plaintiff offers no argument as to how policies (other than <u>term</u> policies) issued before January 1, 2013 are subject to the Statutes and therefore within the scope of her proposed common question. ECF No. 41 at 9 (Order on FLIAC's Motion to Dismiss, September 1, 2020) (finding Statutes do not apply retroactively but can apply to pre-2013 term policies if renewed after January 1, 2013).

1   2014) (affirming denial of class certification in part because the defendant used five different contracts

2   with materially different language), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct.

3   1702 (2017).

4     **3. Individualized Legal Issues Predominate Because Plaintiff's Proposed Class**

5       **Implicates the Laws of a Third of the United States and England**

6     Plaintiff fails to prove that she can constitutionally apply California law to all class claims. *Mazza*,

7   666 F.3d at 589.  UCL claims are not applied extraterritorially. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191,

8   1207 (2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding

9   the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against

10  extraterritoriality applies to the UCL in full force.").  To establish extraterritorial application of California

11  law for breach of contract claims, Plaintiff must prove that "California has 'significant contact or

12  aggregation of contacts' to the claims of <u>each class member</u>." *Id.* (citation omitted) (emphasis added).

13  This requires determining that the parties, at the time of contracting, "had any idea that [California] law

14  would control." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985).  Determining this for class

15  members holding policies issued in another state or who did not live in California when the policy lapsed

16  will require resolution of significant individualized issues.

17    The 526 policies within Plaintiff's proposed class were issued and delivered in Arizona, California,

18  Colorado, Florida, Illinois, Kentucky, New York, Oregon, Texas, Virginia and Washington. *See* ECF No.

19  70-10 (Ex. 8 to Nicholas Decl.).  When these policies lapsed, the policyholders resided in Arizona,

20  California, Colorado, Hawaii, Idaho, England, North Carolina, Nevada, New York, Oregon, Texas, Utah,

21  Virginia, Washington and Wisconsin.  *Id.*  Class certification thus is not appropriate given the

22  individualized inquiry necessary to determine choice of law issues across Plaintiff's proposed class. *See*

23  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("[T]he district court

24  correctly noted that 'plaintiff does not show how application of California law [to all class members'

25  claims] satisfies constitutional due process requirements in this case.'") (alteration adopted).

26    **4. Many Potential Claims are Time Barred and Individualized Inquiries May**

27      **Predominate FLIAC's Statute of Limitations and Laches Defenses**

28    As Plaintiff's proposed class potentially extends to all policies that have lapsed since January 1,

2013, there are certainly many policyholders whose claims are time-barred due to statutes of limitations or laches. *See* Cal. Bus. & Prof. Code. § 17208 (four year statute of limitations for a UCL claim); Cal. Code Civ. Proc. § 337 (four year statute of limitations for breach of contract claims). There are 213 policies in Plaintiff's class listing that lapsed before April 28, 2016 (four years prior to the filing of her Complaint). *See* ECF No. 70-10 (Ex. 8 to Nicholas Decl.). For class members whose claims are governed by other state laws, limitations periods may be different. *See* Cal. Civ. Code § 361 (where a cause of action arises in another state and is time-barred, it generally cannot be brought in California); *See e.g.,* CO Rev. Stat. § 13-80-101 (3-year statute of limitations for breach of contract). Assessing limitations and laches issues will require individualized determinations, especially taking into consideration the delayed discovery rule applicable to breach of contract claims. *See Parrish v. National Football League Players Ass'n*, 534 F.Supp.2d 1081, 1089 (N.D. Cal. 2007) ("To rely on the discovery rule, a plaintiff must plead specific facts describing the time and manner of discovery and their inability to have discovered the claim earlier despite due diligence.").

## C. Plaintiff Fails to Carry Her Burden Under Rule 23(a)(2) or 23(b)(3) to Proffer a Mechanism for Assessing Harm and Damages on a Classwide Basis

"[P]laintiffs must be able to show that their damages stemmed from the defendant's actions . . . ." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Additionally, a plaintiff seeking certification under Rule 23(b)(3) must show that damages are capable of measurement on a class-wide basis.[18] *Comcast*, 569 U.S. at 34-35. Under *Comcast*, a plaintiff must show that its proposed damages model is consistent with their theory of liability in the case. *Id.* "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*; *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014

---

[18] This applies with equal force to a class-wide restitution remedy. *See* Compl., ¶ 81. Restitution under the UCL "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice." *Tucker v. Pacific Bell Mobile Servs.*, 208 Cal. App. 4th 201, 229 (2012). Thus, any restitution award "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 698 (2006). Although the "difference between what the plaintiff paid and the value of what the plaintiff received" can be a "proper measure of restitution," the plaintiff cannot "recover under this measure" unless there is "evidence of the actual value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).

U.S. Dist. LEXIS 173789, at *26 (N.D. Cal. Dec. 15, 2014).[19]  Class certification should be denied in cases like this where a putative class member's ability to prove damages *at all* varies.  *See Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06cv02671 BTM (WMc), 2012 WL 3762440, at *6 (S.D. Cal. Aug. 28, 2012) (denying certification where "each putative class member's entitlement to damages hinges on . . . individualized proof" that predominates even with some class-wide issues).

Plaintiff has not suggested, nor does there exist, any rational way of assessing and quantifying on a classwide basis the damages associated with a life insurance policy wrongfully lapsing.  Additionally, there are two different groups subsumed within Plaintiff's proposed class: (1) beneficiaries of policies where the insured died after the policy lapsed, and (2) policyholders with lapsed policies who are alive.

Plaintiff suggests for the situation where an insured has died following a policy lapse (and under her theory a specified death benefit would be owed if FLIAC failed in any way to comply with the Statutes) the value can be quantified based on the death benefit value.  Pl.'s Mot. at 18.  But the only three policies falling into this category involve two insureds who affirmatively and voluntarily terminated their coverage prior to lapse.[20]  *See* Schimmel Decl., ¶¶ 22-25, Exs. 8, 9.  Even if FLIAC bore some liability, an individualized inquiry would be required to assess damages where an insured voluntarily lapsed a policy but later died, which is not an inquiry suited for class certification.

The insureds under the remaining 523 policies (including Plaintiff) are believed to be alive.  For these policyholders, Plaintiff offers no damage model across the class.  Indeed, Plaintiff does not offer a model for the damages she contends she herself has allegedly suffered.  Plaintiff alleges in her Complaint that the members of the proposed class are entitled to "un-refunded premiums, withheld benefits, and diminution of value of policies."  Compl., ¶ 81.  But Plaintiff offers no evidence *whatsoever* in her Motion

---

[19] While class certification may not normally be defeated solely due to the "need for individualized findings as to the amount of damages," the plaintiff must nonetheless introduce a "common methodology for calculating damages" under which "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated."  *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016); *accord Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (difficulties in calculating damages will not defeat certification, but only when "a valid method has been proposed for calculating those damages"), *rev'd on other grounds*, 139 S. Ct. 710, 713 (2019).

[20] Even if there are other policies now in this category, an individualized determination would be necessary to determine whether the policyholder lapsed voluntarily or was otherwise actually harmed by any purported non-compliance with the Statute.

regarding the alleged diminished value of class members' policies or how it might be calculated on a class-wide basis.[21]   The value of a life insurance policy is highly dependent on a number of factors (such as the insured's current health and life expectancy, the premiums required to be paid, and many others), all of which require individualized inquiries.   *See Schwab v. Comm'r*, 715 F.3d 1169, 1179 (9th Cir. 2013) (explaining no "one-size fits all" methodology for ascertaining the fair market value of a life insurance policy).   Without evidence on these factors, a calculation of diminished value is impossible.   *Chowning v. Kohl's Dept. Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018) (plaintiff seeking restitution under the UCL must provide competent evidence demonstrating that the value of what the plaintiff received is less than what the plaintiff paid).

To the extent Plaintiff purports to seek a full refund of policy premiums, such a damages model would be untenable because Plaintiff cannot viably claim that the putative class received nothing of value.   *Id*.   Although Plaintiff contends that class member policies were wrongfully lapsed for nonpayment of premium, that does not render the policies worthless while they were still in force.   Indeed, the premiums paid by members of the proposed class were paid in exchange for life insurance coverage *already received*. If Plaintiff contends that those policies were worth less than the premiums paid, Plaintiff was required to propose a valid method for calculating the difference on a class-wide basis using common evidence.[22] Plaintiff's failure to do so is fatal to her request for certification.   *Astiana v. Ben & Jerry's Homemade, Inc*., 2014 WL 60097, at *13 (N.D. Cal. Jan. 7, 2014) (denying class certification when plaintiff failed to provide "evidentiary proof" showing a class-wide method of awarding relief).

Without any commonality as to damages, individualized issues predominate.   *Lucas v. Breg, Inc*., 212 F. Supp. 3d 950, 970 (S.D. Cal. 2016) (plaintiff failed to satisfy predominance requirement when fact

---

[21] FLIAC does not concede that such damages are even available to the living class members based on a breach of contract theory; indeed, they are not. *See Erreca v. Western States Life Ins. Co.* (1942) 19 C2d 388, 402 (no recovery for future benefits is allowed when suing on a breach of contract theory).

[22] Regardless, no restitution method could conceivably produce a class-wide result in any event. *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1167 (9th Cir. 2014).   The "value" of each class member's policy is not subject to common proof, and would depend on highly individualized circumstances including, *inter alia*, the type of policy, the face amount of the policy, the length of the term and the number of years the policy had been in effect at the time of the allegedly unlawful lapse, and premium classification (which itself would be based on individualized issues specific to each policyholder, such has health and medical records, family health history, tobacco use, etc.).

1   of damages could not be established by proof common to the class); *Gonzales v. Comcast Corp.*, No. 10-

2   CV-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ("[I]t is generally accepted that classes

3   should not be certified where not every member of the proposed classes can prove with common evidence

4   that they suffered impact.") (internal citations omitted).  As such, certification should be denied.

5   **D.**   **Plaintiff Fails to Carry Her Rule 23(a)(3) Burden of Showing that Her Claims Are Typical of**

6   **the Class**

7   Plaintiff has not established that her "claims or defenses . . . are typical of the claims or defenses of

8   the class."  Fed. R. Civ. P. 23(a)(3).  "As the Supreme Court recognized in *Wal-Mart*, Rule 23(a)'s

9   commonality and typicality requirements occasionally merge: 'Both serve as guideposts for determining

10  whether under the particular circumstances maintenance of a class action is economical and whether the

11  named plaintiff's claim and the class claims are so interrelated that the interests of the class members will

12  be fairly and adequately protected in their absence.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)

13  (quoting *Wal-Mart*, 564 U.S. at 349).  "The test of typicality is whether other members have the same or

14  similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

15  whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts*

16  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

17  Plaintiff fails to satisfy this test because FLIAC has unique defenses to Plaintiff's individual claims.

18  It is well-recognized "that a named plaintiff's motion for class certification should not be granted if there

19  is a danger that absent class members will suffer if their representative is preoccupied with defenses unique

20  to it."  *Ellis*, 657 F.3d at 984 (internal citations omitted).  The evidence shows that Plaintiff failed to

21  properly advise FLIAC of her updated address and, that had she properly updated her address, Plaintiff's

22  husband would have likely paid the premium prior to the policy's termination irrespective of the length of

23  the grace period reflected in the notice.  *See* P. Siino Dep. at 58:4-12, 59:4-10.  Moreover, Plaintiff

24  maintains that she never received the purportedly defective lapse notice upon which she bases her claim.

25  *See* P. Siino Dep. at 37:11-15, 44:4-14.  As such, Plaintiff cannot plausibly claim that any act or omission

26  on FLIAC's part vis-à-vis the lapse notice caused her policy to lapse, and as such she did not suffer the

27  same or similar injury (or any injury at all) as the members of the proposed class.  Plaintiff has thus failed

28  to establish typicality.  *Hanon*, 976 F.2d at 508.

**E.**   **Plaintiff is an Inadequate Class Representative Due to Her Lack of Involvement with Her Policy or The Disputed Lapse**

Plaintiff fails to establish that she will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiff admitted that she had no involvement in maintaining her policy, and that her husband handled all aspects of her policy. *See* S. Siino Dep. at 24:6-21; P. Siino Dep. at 36:21-25, 37:1-15, 39:4-16. She was unaware of when premiums were due on the policy, how much the annual premium was, and never opened any mail from FLIAC. *See id.* at 39:4-16, 41:7-16, 44:4-14, 45:6-19, 52:22-25, 53:1-4, 59:11-13. Plaintiff has no knowledge surrounding the circumstances of her policy's lapse, other than what has been reported to her by her husband. *See, e.g.,* at 36:21-25, 37:1-15. And when asked about these conversations in her deposition, she refused to testify based on the spousal privilege. *See id.* at 41:21-25, 42:1-2. Plaintiff cannot adequately represent the proposed class when she is wholly unaware of the facts surrounding her own claim. *See In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) (class representative inadequate based on deposition testimony that "he knows essentially nothing about the case," and that he "would defer to counsel in prosecuting this action").

**F.**   **Plaintiff Fails to Carry Her Rule 23(b)(3) Burden of Establishing that Class Certification is Superior to Other Available Methods**

Certification should also be denied in this case because Plaintiff has failed to establish that class treatment of her claims is superior. Fed. R. Civ. P. 23(b)(3); *Zinser*, 253 F.3d at 1190. In making this determination, a court may take into consideration: (1) "class members' interests in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation" regarding the "same controversy"; (3) the "desirability or undesirability" of litigating all claims in the same forum; and (4) the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A) -(D).

As to the first factor, class members' interests in controlling their own cases will increase with the amount of damages potentially at issue. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233-34 (9th Cir. 1974). Here, Plaintiff's Motion makes clear that the damages at issue for many putative class members will be substantial. See Pl.'s Mot. at 18 (arguing that beneficiaries of class policies will be entitled to the face amount of the policy plus prejudgment interest). Class member policies have face values ranging

between $10,000 and $1 million.  *See* ECF No. 70-10 (Ex. 8 to Nicholas Decl.), Column F.  This is not the type of case where plaintiffs will be unable to pursue their claims on an individual basis because the cost of doing so exceeds their potential recovery.  As such, this factor weighs against a finding that class treatment is superior.  *Zinser*, 253 F.3d at 1191.

Plaintiff further argues that class treatment is superior because class members will never know they have a claim, the record is devoid of any other suits against FLIAC on this issue, and class action provides judicial efficiency and equity.  Pl.'s Mot. at 19.  However, Mr. Siino testified that he contacted an attorney regarding his wife's claim after he saw an advertisement on the internet suggesting that California residents whose life insurance policies lapsed may have a potential legal claim.  S. Siino Dep., 68:5-12, 69:21-24.  It is thus reasonable to conclude that other putative class members could see similar advertisements and learn that they may have a potential claim, and that someone who is upset about their life insurance policy lapsing is likely to call an attorney to ascertain their options.  The many pending lawsuits in California evidences this.

A class action would also be unmanageable due to the existence of a plethora of separate issues that will have to be litigated in order to establish a right to recovery.  *Zinser*, 253 F.3d at 1192.  As discussed above, Plaintiff must prove breach, resulting harm, and damages to establish liability for *every claim of the putative class*.  *See supra*, §§ B.1-4.  The many individualized issues of law and fact would require hundreds of mini-trials and, thus, make the putative class unmanageable.  Moreover, many members of the putative class have no harm at all depending on the particular reason for the policy's termination (i.e., was it voluntarily lapsed? Was the policy nearing expiration?).  Individualized review, including depositions of hundreds of policyholders and beneficiaries, will be required.  Plaintiff has not explained how this can be managed so that even liability could be established on a classwide basis, and thus fails to establish superiority.  *Zinser*, 253 F.3d at 1189-90 (where causation and damages were individualized and "there was no manageable trial plan adequate to deal with individualized issues and variances in state law," predominance was not met).

### G.   Rule 23(b)(2) Certification is Not Permitted As a Matter of Law Where Plaintiff Seeks Individualized Monetary Damages

Plaintiff seeks certification under Rule 23(b)(2) for her injunctive and declaratory relief claims.

Pl.'s Mot. at 14.  This is improper.  First, the Supreme Court in *Wal-Mart* held that certification of a Rule 23(b)(2) class is improper if the putative class members' claims for monetary relief are more than incidental to their claims for injunctive and declaratory relief, and that "individualized monetary claims belong in Rule 23(b)(3)."  564 U.S. at 360-67.  Following *Wal-Mart*, several courts have denied Rule 23(b)(2) certification for claims limited to declaratory and injunctive relief where the class members had related claims for monetary damages.[23]  Here, Plaintiff clearly seeks "individualized monetary relief" by asking for relief in the form of a "return of all past premiums paid" or the "value of the lost Policy as of date of termination."  Pl.'s Mot. at 15, n.7.  Moreover, Plaintiff wholly fails to even address whether "a single injunction or declaratory judgment would provide relief to each member of the class," as required to show that class certification is proper under Rule 23(b)(2).[24]  *Wal-Mart*, 564 U.S. at 360.

Second, this Court has already held that Plaintiff lacks standing to bring any claims for injunctive relief.  *See* ECF No. 41 (Order on Motion to Dismiss) at 15 ("Siino has failed to show a very significant possibility or real threat of future re-injury given that her Policy was terminated in 2018 . . . because the Policy has lapsed, there is no ongoing need for injunctive relief.").  Plaintiff is therefore not an adequate class representative.

Finally, putative class members that voluntarily lapsed their policies, or whose policies lapsed for reasons unrelated to FLIAC's compliance with the Statutes, similarly lack standing to seek injunctive or declaratory relief.  *Mazza*, 666 F.3d at 594 ("No class may be certified that contains members lacking Article III standing.").  There is no controversy between FLIAC and the class members who voluntarily

---

[23] *E.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 179 (S.D. Cal. 2019) (citations omitted); *Magallon v. Vital Recovery Servs., LLC.*, No. 16CV02971 JAH-BLM, 2018 WL 1336291, at *5 (S.D. Cal. Mar. 15, 2018); *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 634-35 (N.D. Cal. 2014); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 578 (E.D. Tenn. 2014); *Rouse v. Caruso*, No. 2:06-CV-10961, 2013 WL 588916, at *5 (E.D. Mich. Jan. 7, 2013), *report and recommendation adopted*, 2013 WL 569638 (E.D. Mich. Feb. 13, 2013); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 562-65 (C.D. Cal. 2012).

[24] The cases relied upon by Plaintiff are inapposite.  Pl.'s Mot. at 15 (citing *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 52, 63-64 (3d Cir. 1994), *Brown v. Kelly*, 609 F.3d 467, 477, fn. 8 (2d Cir. 2010), and *Gooch v. Life Inv'rs Inso. Co. of Am.*, 672 F.3d 402, 427 (6th Cir. 2012)).  Both *Baby Neal* and *Kelly* pre-date the Supreme Court's decision in *Wal-Mart*.  The court in *Kelly* also addressed the irrelevant issue of certification of a defendant class and the plaintiffs in *Baby Neal* did not seek individual damages, like Plaintiff does here.  *Kelly*, 609 F.3d at 477 n.8; *Baby Neal*, 43 F.3d at 64.  Further, in *Gooch* the Sixth Circuit vacated the district court's class certification decision. 672 F.3d at 410, 434.

1   lapsed their policies, or whose policies lapsed for reasons unconnected to FLIAC's compliance with the

2   Statutes; thus, these members fail to satisfy the "controversy" requirement for Article III standing and

3   cannot be certified as part of the class.  *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (explaining

4   that "no principle is more fundamental to the judiciary's proper role in our system of government than the

5   constitutional limitation of federal-court jurisdiction to actual cases or controversies").  Plaintiff seeks to

6   use the class certification process to manufacture disputes between FLIAC and its former policyholders

7   where none exists.

8           Therefore, the Court should deny Plaintiff's request to certify the class under Rule 23(b)(2).

9   **H.      "Issue Certification" Under Rule 23(c)(4) Is Not Appropriate Because it Would Not**

10          **Materially Advance the Whole Litigation**

11          Plaintiff contends that, in the alternative, the Court should certify the legal issue of whether the

12  Statutes apply to FLIAC policies issued prior to January 1, 2013 under Rule 23(c)(4).  Pl.'s Mot. at 20.

13  Federal Rule of Civil Procedure 23(c)(4) states that "[w]hen appropriate, an action may be brought or

14  maintained as a class action with respect to particular issues."  F.R.C.P. 23(c)(4).[25]  For the reasons

15  explained herein, resolving the question of whether the Statutes apply to policies issued prior to 2013 would

16  do little to advance the interests of the putative class, as numerous individualized inquiries will still be

17  necessary as to the elements of breach, causation, and damages.  As such, issue class certification is not

18  appropriate here.  *Reitman v. Champion Petfoods USA, Inc.*, 830 Fed.Appx. 880, 882 (9th Cir. 2020)

19  (finding that issue class certification is not warranted where there are numerous individualized issues

20  affecting determinations of liability).  Moreover, certifying an issue class under Rule 23(c)(4) is

21  inappropriate when it "does not materially advance the disposition of the litigation as a whole."  *Id.*

22  Rubenstein, 2 Newberg on Class Action 4:90 (5th ed. 2012).

23                              **V.      CONCLUSION**

24          FLIAC respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

25  ─────────────────

26  [25] The U.S. Supreme Court has never held that Rule 23(c)(4) class certification is an alternative to
    certification under one of the Rule 23(b) categories. Certifying an "issue class" here would violate the

27  Seventh Amendment. *See, e.g.*, *Cooper v. S. Co.*, 390 F.3d 695, 722 (11th Cir. 2004); *Castano v. The
    American Tobacco Company*, 84 F.3d 734, 750 (5th Cir. 1996); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d

28  1293, 1300–04 (7th Cir. 1995) (Posner, C.J.); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318–19, 328
    (5th Cir. 1978).

1

Dated:  May 28th, 2021

McDOWELL HETHERINGTON LLP

2

3

By:_____

4

Jodi K. Swick
Allison Fernandez

5

6

Attorneys for Defendant

7

FORESTERS LIFE INSURANCE AND ANNUITY
COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28