**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PAMELA SIINO, Individually and on Behalf of the Class;

                    Plaintiff,

          vs.

FORESTERS LIFE INSURANCE AND ANNUITY COMPANY, a New York Corporation.

                    Defendant.

CASE NO.: 3:20-cv-02904-JST

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**Hearing Date**: July 15, 2021
**Hearing Time**: 2:00 p.m.
**Location**: Courtroom 6, 2nd Floor

**District Judge**: Hon. Jon S. Tigar

**Action Filed**: April 28, 2020

---

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  DISCUSSION ................................................................................................... 2

    A.  Commonality and Predominance Exist here ....................................... 2

        1.  *The Statutes' Strict Compliance Mandate Supports Certification Here and Renders Defendants' Attacks Irrelevant.* ........................................................................... 3

        2.  *Defendant Conflates the concepts of "harm," "damages," and "standing." In any Event, None of Those Issues Defeat Certification.* ...................................................... 5

        3.  *There are No Individualized Issues Regarding Choice of Law* .................. 8

        4.  *The Alleged Statute of Limitations is Another Non-Issue* ........................... 9

        5.  *Dicta from Some Other Unpublished and Unfinished Trial Court Proceedings Changes Nothing* .................................... 10

    B.  Plaintiff's Claims are Typical ............................................................. 11

    C.  Pamela Siino Satisfies the Minimal Standard for Adequacy ............ 12

    D.  Plaintiff's Claims Satisfy Rule 23(b)(2) ........................................... 13

    E.  Class Treatment Is Not Just Superior Under Rule 23(B)(3), It Is Essential ............................................................................................... 14

    F.  Fed. R. Civ. P. 23(c)(4) Is a Viable Alternative to Full Certification If Needed ........................................................................ 15

III.  CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Heart Fed. Sav. & Loan Assn.*,
  208 Cal. App. 3d 202 (Cal. App. 3d Dist. 1989)......................................................3

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007)......................................................................6, 15

*Bennett v. Am. General Life Ins. Co.*,
  No. CV 13-04822 DMG (Ex),
  2015 WL 12661909 (C.D. Cal. Jan. 26, 2015)......................................................6

*Caminetti v. Manierre*,
  23 Cal.2d 94 (1943)...................................................................................6

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal.App.3d 1371 (1990)........................................................................7

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................................8

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
  445 U.S. 326 (1980).................................................................................14

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011).................................................................11, 12

*Haley v. Casa Del Rey Homeowners Assn.*,
  153 Cal. App. 4th 863 (Cal. App. 4th Dist. 2007)...............................................8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992)......................................................................11

*In re Adobe Systems, Inc. Privacy Litigation*,
  66 F.Supp.3d 1197 (N.D. Cal. 2014).............................................................7

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006).......................................................................15

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009)..............................................................................6, 7

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018)..................................................................6, 15

*Kim v. AXA Fin., Inc.*,
  No. 2:07–cv–0346–RLH–RJJ,
  2008 WL 11388671 (D. Nev. Nov. 11, 2008)....................................................5

*Kivett v. Flagstar Bank, FSB*,
  C 18-05131 WHA,
  2020 WL 7260531 (N.D. Cal. Dec. 10, 2020) ...............................................6, 7

*Kwikset Corp. v. Superior Ct.*,
    51 Cal.4th 310 (2021)...........................................................................................7

*Lee v. Superior Court*,
    177 Cal.App.3d 1108 (Cal. Ct. App. 2009)........................................................10

*Liebovich v. Shahrokhkhany*,
    56 Cal. App. 4th 511 (Cal. App. 2d Dist. 1997)..................................................3

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)...........................................................................12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................5

*Mackey v. Bristol West Inc. Serv. Of Calif.*,
    105 Cal.App.4th 1247 (Cal. Ct. App. 2003).......................................................10

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)...............................................................................9

*McHugh. Moriarty v. Am. Gen. Life Ins. Co.*,
    3:17-CV-1709-BTM-WVG, 2020 WL 6938388 (S.D. Cal. Nov. 25, 2020) .......11

*Mejdrech v. Met-Coil Sys. Corp.*,
    319 F.3d 910 (7th Cir. 2003)..............................................................................15

*Neale v. Volvo Cars of N. Am.*,
    794 F.3d 353 (3d Cir. 2015)................................................................................6

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270, 283 (N.D. Cal. 2016) ...............................................................2

*Perez-Encinas v. AmerUs Life Ins. Co.*,
    468 F.Supp.2d 1127 (N.D. Cal. 2006).................................................................7

*Romano v. Rockwell Int'l, Inc.*,
    14 Cal.4th 479 (1996)....................................................................................9, 10

*Smith v. Univ. of Wash., Law Sch.*,
    233 F.3d 1188 (9th Cir. 2000)...........................................................................13

*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*,
    231 Cal. App. 4th 1131 (Cal. App. 1st Dist. 2014)..............................................9

*Thomas v. State Farm Ins. Co.*,
    424 F. Supp. 3d 1018 (S.D. Cal. 2019) ...............................................................8

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923, (9th Cir. 2018)..............................................................................2

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)..............................................................................15

TABLE OF AUTHORITIES

*Wagner v. NutraSweet Co.*,
  95 F.3d 527 (7th Cir.1996) ....................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................13, 14

**STATUTES**

15 U.S.C. § 1011 ...................................................................................................9

15 U.S.C. § 1012 ...................................................................................................9

28 U.S.C. § 2201 ...................................................................................................8

Cal. Civ. Code, § 3281 ..........................................................................................7

Cal. Civ. Code, § 3360 ..........................................................................................7

Cal. Ins. Code, § 10113.5 .......................................................................................4

**OTHER AUTHORITIES**

Newberg on Class Actions § 4:36 (5th ed.) .........................................................14

**RULES**

Fed. R. Civ. P. 23 ..........................................................................................2, 13, 14

## I.  INTRODUCTION

Plaintiff's theory is simple and well-suited for class certification:  that Defendant failed to strictly comply with all the provisions of The Statutes, and the California policies Defendant terminated thereafter for nonpayment of premium were, therefore, not properly terminated. Defendant's limited defense is equally simple:  that The Statutes did not apply to the polices or, alternatively, it *substantially* complied with most of The Statutes' requirements even if – as it admits - it did not totally comply.  Of course, we need not decide the merits of these important questions today.  It is enough, rather, that these claims and the defenses are common – if not universal – and well suited for class adjudication.

The claims of every class member are identical in all aspects that matter.  Defendant terminated all class members policies, indisputably, for nonpayment of premium and without strictly complying with The Statutes.  All class members thus felt the same harm:  the loss of a life insurance policy the law says they get to keep (and should have today).

Defendant's limited defense to the merits confirms that class treatment is appropriate.  The core question of whether The Statutes apply to all of Defendant's California policies is a simple and binary legal question that applies to everyone.  The next (also important) question raised by the Defendant – whether substantial compliance can suffice – is likewise a simple legal question that applies to everyone.

At bottom, Defendant strains to invent numerous hypothetical "questions" regarding liability that the Defendant, in turn, claims make the case more complicated.  For example, Defendant asks this Court to question the motives and post-lapse conduct of class members.  But those questions are irrelevant.  None of those things affect application of The Statutes.  The Statutes, rather, say quite clearly that if they are not complied with, any attempt to lapse policies for nonpayment of premium is void.  Period.  It does not matter if the policy owner wanted the coverage, or could afford it, or if they missed their premium payment for sympathetic reasons or otherwise.  There is no motive or intent component to these statutes or any of Plaintiff's claims. This case is perfect for class certification, Defendant raises no relevant issues that drive the dispute or that will swamp the core common issues, and Plaintiff's motion should be granted in full.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## II.    DISCUSSION

### A.    Commonality and Predominance Exist here

Defendant largely ignores the many cases finding that an insurers' common practices readily meet the "commonality" requirement under Rule 23(a)(2).  *See,* e.g. ECF No. 70 at 11:15-12:15.  Defendant also forgets that "commonality" is not a particularly stringent requirement and that even a "single common question" will satisfy it. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016), citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011).   Here, the answer to the question of whether The Statutes apply is therefore enough, by itself, to satisfy commonality.

Likewise, Defendant misunderstands the predominance requirement.  Predominance asks merely whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 931 (9th Cir. 2018).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as ... some affirmative defenses peculiar to some individual class members.'" *Id.*  Here, the applicability of the Statutes to all California policies (pre and post 2013) is, again, the *most* "significant aspect." Also important is the common question of whether substantial compliance is enough to satisfy The Statutes.   These are by far the two most important issues in the case. Predominance is thus satisfied to the extent it is necessary.[1]

Defendant, however, attempts to manufacture additional hypothetical liability "questions" and points to them as potentially complicating factors.  Each of Defendants' proposed questions, though, are either irrelevant to liability here, or further establish the existence of important *common* questions, thereby confirming the suitability of this case for class certification - or both.

---

[1] "Predominance" is only relevant to Plaintiff's Rule 23(b)(3) damages class, i.e., to determining the unpaid benefits owed to beneficiaries.  It appears that this is only two or three policies of the total number at issue.  Defendant's Opposition, ECF 80, at 14-15 ("Oppo.").

*1.    The Statutes' Strict Compliance Mandate Supports Certification Here and Renders Defendants' Attacks Irrelevant.*

Defendant argues, almost in passing, that it would be "dubious" to say that failure to provide The Statutes' safeguards preserves the insurance policy or voids any attempted lapse. Oppo. at 10.  Notably, Defendant cites no authority to support its argument.  *Id.*  Nor could it.  The Statutes themselves could not be clearer as to the effect of mishandling their provisions:  the policies remain in-force until there is compliance, i.e., lapses or terminations "shall not be effective" irrespective of any other factors.  Cal. Ins. Code, §§ 10113.71(b)(1) and 10113.72(c).

As Plaintiff pointed out in her opening brief, this not some wild concept. Every landlord knows that failure to strictly comply with eviction notice requirements means that any attempted eviction for failure to pay rent is void, i.e., the tenant gets to stay in the property until the landlord fixes the notice.  *Liebovich v. Shahrokhkhany*, 56 Cal. App. 4th 511, 513 (Cal. App. 2d Dist. 1997).   And every bank knows that it must strictly comply with foreclosure sale notice requirements before it can foreclose on and sell its borrower's home after a failure to pay the mortgage.  *Anderson v. Heart Fed. Sav. & Loan Assn.*, 208 Cal. App. 3d 202, 211 (Cal. App. 3d Dist. 1989) ("The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid").   An insurance company's attempt to terminate a life insurance policy for nonpayment without first complying with The Statutes is no more effective than a landlord or bank's attempt to kick out a resident before providing proper notice and related protections.

Said another way, there is nothing an individual policy owner can do to convert the insurance company's inadequate notice into an *adequate* one just like there is nothing an apartment tenant can do to convert his landlord's faulty Three-Day Notice to Pay or Quit into a lawful one. And why a policy owner might have missed his or her premium payment is no more relevant than, in a foreclosure action, why the homeowner did not pay his or her mortgage.    Stated simply, questions about motive, or why or how a policy came to lapse for nonpayment are simply not

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

relevant.[2]  Liability does not turn here on the individual actions or beliefs of the class members because of the simple and strict nature of the Statutes at issue, which have no such elements.[3]

Defendant also quips – again without any citation - that such an interpretation of The Statutes is "draconian." Oppo at 10.  Defendant is wrong again.  All Defendant – or any insurance company – needs to do, is just provide the right notice.  Even if we ignore for now that the problem of insufficient notice is really a problem of the insurance company's own making, the power to fix it is still totally within the insurance company's control and can be done easily and quickly with the stroke of a pen.  Indeed, Defendant confirmed at deposition that the administrative burdens imposed by The Statutes were so "immaterial," that it decided not to do an actuarial or financial impact analysis after the Statutes were passed.  Tomasevic Reply Decl., Ex. 12 (Deposition of William Drinkwater ["Drinkwater Dep."]) at 32:13-38:13.  Defendant further admitted that passage of The Statutes had no effect on the pricing of its policies.  *Id.* at 35:3-36:13.  Asking Defendant to now comply with the plain text and admittedly immaterial (to the insurance company) requirements of The Statutes is far from "draconian."

---

[2] And contrary to Defendant's suggestion that multiple types of policies and multiple reasons for lapse complicate matters, the reality is that two years after issuance, the *only* way to contest or terminate a life insurance policy is for nonpayment of premium.  Cal. Ins. Code § 10113.5.  And every life policy terminated for non-payment of premium (which after two years is *every* policy) must comply with The Statutes.

[3] It is also hypocritical for this insurance company to object to the plain terms of The Statutes and their strict compliance mandate. Defendant demands its *own* brand of strict compliance from its policy owners.  Indeed, Defendant acknowledges in its Opposition that it received a change of address request from the Siino family, but then argues that the change request was ineffective, and that it should be relieved of liability, because Mrs. Siino did not sign the change request as mandated by its internal rules.  Oppo. at 7:13-15 ("FLIAC rejected the change of address request submitted for Plaintiff's policy because it was not signed by Plaintiff.");  Schimmel Decl., ¶ 13.  Also, Defendant cites the two policies that lapsed and where the insured died.  Oppo at 14-15.  It notes that those policy owners may have asked to formally surrender their policy.  *Id.* But, ironically, Defendant did not accept that documentation or honor those surrender requests.  *See id.* at 15:8-12.  The documents (Defense Exhibits 8 & 9) did not comply with Defendant's own internal requirements for processing formal surrenders and so Defendant did not immediately terminate the policies as requested.  *See* Tomasevic Reply Decl., Ex. 13 (internal manual confirms that signed forms and manager approval are required to process a surrender).  Rather, Defendant waited for the next premium to become due (probably hoping to be paid), then processed those policies as having *lapsed for nonpayment of premium,* just like every other policy in the class.  Oppo at 15:8-12;  Schimmel Decl., ¶ 26.  In short, Defendant is comfortable with strict compliance standards when it suits it purposes, but not when it comes to following California law.

Importantly, by highlighting this important legal question (*what happens to the policies?*), Defendant only confirms that class treatment is appropriate.  More specifically, Defendant will apparently raise the following question at summary judgment or trial:  *what happens to the policy if there is not strict compliance with The Statutes?* Setting aside that the answer – a merits issue - is provided by The Statutes themselves; suffice to say for now that the question itself is applicable to every class policy because Defendant admits it did not strictly comply for *any* of those policies.  Moreover, *the answer* to the question will affect every policy equally, if not be dispositive.  Indeed, the answer is a proxy for the central dispute in this case:  *are the policies still in effect and to be honored,* or, as the insurance company contends, *are the policies terminated and free to be ignored*? These are the only two possible answers to this important – and common - question.  It makes no sense to litigate this same important legal question – i.e., engage in the same statutory analysis - over 500 times, when one time (one motion for summary judgment) will suffice.

2.  *Defendant Conflates the concepts of "harm," "damages," and "standing." In any Event, None of Those Issues Defeat Certification.*

Defendant interjects another irrelevant issue to attack certification: that of money damages.  Defendant confuses and discusses interchangeably the distinct concepts of "harm" (aka "detriment" or "injury"), "standing," and money "damages." We must refocus on what is truly relevant at this stage and to Plaintiff's claims.  When we do so, we confirm that certification is indeed appropriate.

Here, Plaintiff does not dispute that she needs standing to press her claims in this federal court.  But it is *harm* that creates standing, not any minimum amount of money damages.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The harm that Mrs. Siino (and her fellow class members) felt is, again:  the termination and continued repudiation of their life insurance policies that California law says should be in force today.  This Court has already confirmed that the wrongful termination of an insurance contract is, itself, a legal harm sufficient to confer standing to sue.  *See* ECF 41 at 6 ("The termination of Siino's life insurance policy constitutes an injury in fact sufficient to establish standing"), citing *Kim v. AXA Fin.*, Inc., No. 2:07–cv–0346–RLH–RJJ, 2008 WL 11388671, at *4 (D. Nev. Nov. 11, 2008) (holding that the plaintiff had

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

"standing to pursue damages for wrongful cancellation of her life insurance policy") and *Bennett v. Am. General Life Ins. Co.*, No. CV 13-04822 DMG (Ex), 2015 WL 12661909, at *6 (C.D. Cal. Jan. 26, 2015).[4]  And more relevant to today's procedural motion, the nature of this harm (the termination of an insurance policy) lends itself to class certification here because, by definition, every one of these class members experienced that *same* harm. Defendant terminated every one of their policies for nonpayment of premium without first honoring The Statutes and still considers those policies terminated today.

Another problem with Defendant's reasoning is that it requires each absent class member to establish standing at the class certification stage.  But Plaintiff need not make any such showing. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1028, fn. 11 (9th Cir. 2018) (only one Plaintiff needs to have standing for a class action to proceed), citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 362 (3d Cir. 2015) (holding that "unnamed, putative class members need not establish Article III standing").[5] Nonetheless, Plaintiff will show that every class member has standing.  Defendant lapsed all class policies for nonpayment of premium without strictly applying The Statutes and continues to repudiate those policies today.  To summarize, every one of these class members shares the same harm – the wrongful and continued repudiation of their insurance contract for nonpayment of premium.  And Defendant certainly *caused* this harm and created standing because Defendant is the one who terminated the class insurance contracts and refuses to recognize their existence today for the singular (common) reason that premiums were not paid, and despite The Statutes mandating that these policies are supposed to be in force today.

---

[4] Indeed, over 75 years ago the California Supreme Court recognized insurance contracts as embodying "a valuable contract right in a chance" and that it is "the *protection* afforded to the insured against the financial effects of the possible occurrence of the contingencies" – like disability or death – which is immediately valuable, even if we cannot know how or when such contingencies will arise or if the policy will still be in force at the time it is really needed. *Caminetti v. Manierre*, 23 Cal.2d 94, 103 (1943) (emphasis in original).

[5] The same is true in California state courts and with respect to UCL claims:  the standing requirement of Section 17204 of California's UCL is met if merely the representative plaintiff satisfies it. *In re Tobacco II Cases*, 46 Cal.4th 298, 315–16 (2009); *Kivett v. Flagstar Bank, FSB*, C 18-05131 WHA, 2020 WL 7260531, at *16 (N.D. Cal. Dec. 10, 2020).

Where Defendant also errs is by mixing in the concept of money "damages." Although these terms are sometimes used indiscriminately, Article III requires harm or injury in fact, not money damages. Likewise, Plaintiff's claims for breach of contract and under California's UCL do not require any one kind or amount of damage. Indeed, California does not even require a Plaintiff to show "appreciable" harm at all before allowing recovery on a breach of contract claim. Cal. Civ. § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages"). And California indeed distinguishes between harm – which is sometimes required – and *damages* – which are not required. *See* Cal. Civ. § 3281 (distinguishing between harm or "detriment," and money "damages."); *Perez-Encinas v. AmerUs Life Ins. Co.,* 468 F.Supp.2d 1127, 1137 (N.D. Cal. 2006) (correctly couching the required contract claim element as one of "harm," not "damages.").

The same is true under California's UCL. As a reminder, the UCL "unlawful" prong – relied on by Plaintiff here – merely "borrows" violations of other laws – like the Insurance Code here - and treats them as unlawful competition that is independently actionable. *In re Adobe Systems, Inc. Privacy Litigation*, 66 F.Supp.3d 1197, 1210 (N.D. Cal. 2014). In turn, Plaintiff's UCL claim borrows the strict compliance feature of The Statutes.

The standing requirement of the UCL, found at Bus. & Prof. Code Section 17204 does not change the result. Merely some kind of economic (rather than intangible) harm – even if only a trifling – will suffice to confer standing on the named plaintiff. *See Kwikset Corp. v. Superior Ct.,* 51 Cal.4th 310, 323-25 (2021). A named plaintiff, furthermore, need not prove entitlement to any restitution, let alone support a specific amount of restitution. *Id.* at 335-36. And again, no showing needs to be made on behalf of absent class members. *In re Tobacco II Cases*, 46 Cal.4th at 315–16; *Kivett,* C 18-05131 WHA, 2020 WL 7260531, at *16.

The UCL harm that suffices again here is the insurance company's termination and continued repudiation of Mrs. Siino's life insurance contract that the Insurance Code says should be in force today. This, of course, is a type of economic injury to one's financial wellbeing – amounting to up to $100,000 in future financial security for just the Siino family. In the end, there

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

is harm, which creates standing as this court has already once found. This harm was suffered by everyone in the class equally. And this harm was certainly caused, at least in part, by Defendant's failure to adhere to the Statutes and/or refusal to acknowledge the in-force nature of the policies today.[6] In the parlance of Rule 23, the question of: *what harm was suffered?* - is a common and important one and so is the answer. Later questions about money damages are simply irrelevant at this stage. *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013) ("Recognition that individual damages calculations do not preclude class certification [] is well nigh universal.") (dissent).[7]

### 3. There are No Individualized Issues Regarding Choice of Law

Defendant's attacks on choice of law grounds are, like its other attacks, launched against a straw man. There are no choice of law issues here because Plaintiff asserts only a California class. The Statutes expressly apply to certain life insurance policies "issued or delivered" in California.[8] And it is only those California policies that Defendant can and did identify through its systems and which are at issue here. Choice of law is not a factor that defeats certification.

What Defendant really argues is that, to the extent the Statutes reach policies where the insured or beneficiary later moved out of state, or where they got their policy in another state but later moved *to* California, applying the Statutes would be unconstitutional. *See* Oppo at 17. First, this is another premature merits question. Nonetheless, Defendant is wrong on those merits. *Manigault v. Springs*,199 U.S. 473 (1905) (states may exercise powers vested to it for the promotion of the common wealth, or necessary for the general good of the public, even if contracts

---

[6] As a reminder, causation is, itself, a lax standard. The Defendant's behavior (the failure to follow the Statutes and the termination of the policies) need only be a "substantial" factor in bringing about the harm. *Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal. App. 4th 863, 871 (Cal. App. 4th Dist. 2007). It need not be the *exclusive* factor.

[7] Additionally, the declaratory relief claims Plaintiff seeks to certify have no stand alone or specific causation/damages requirements. *See, e.g.,* 28 U.S.C. § 2201.

[8] And by operation of law, that includes policies renewed in California, as this Honorable Court recognized in denying Defendant's Motion to Dismiss. Order Granting in Part and Denying in Part Motion to Dismiss or Stay, ECF No. 41 at 9-11; *accord Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1025-28 (S.D. Cal. 2019); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 735 (C.D. Cal. 2019).

entered into previously between individuals may be affected); *California State Automobile Ass'n of Maloney*, 341 U.S. 105, 109 (1951); (The police power granted to the states "is peculiarly apt when the business of insurance is involved.");  *20th Century Insurance Co. v. Garamendi*, 8 Cal.4th 216, 240 (1994) ("it scarcely needs mention that the regulation of the insurance industry is squarely within the state's police power").

Second, and more importantly for today, The Statutes' constitutionality can be proven with common evidence.  Plaintiff would merely have to prove that California has "significant contact or significant aggregation of contacts" to the claims of class members.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589–90 (9th Cir. 2012).  Plaintiff meets that burden for herself and the class because having the policy issued or delivered in California is, by definition, significant contact with California justifying regulation by California.[9]  Stated otherwise, the common evidence of the constitutionality of the Statutes, if truly put at issue, will be the common fact that every policy was necessarily issued or delivered or renewed in California.

### 4. The Alleged Statute of Limitations is Another Non-Issue

Defendant next suggests that the class definition may be overbroad because it could include policy owners whose claims would be barred by a four-year statute of limitations for breach of contract claims.  Defendant is wrong again.  Defendant's behavior is best viewed as an anticipatory repudiation or "anticipatory breach" of a life insurance contract, i.e., the announcing of an intention not to perform prior to the time due for performance. *See Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 231 Cal. App. 4th 1131, 1150 (Cal. App. 1st Dist. 2014).

Under California law, anticipatory repudiation does not trigger the statute of limitations for breach. As explained by the California Supreme Court in *Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479 (1996), when a party to a contract repudiates his or her obligations prior to the time for performance, the counter-party may either disregard the repudiation and wait until the time for

---

[9] Even federal law expressly recognizes the States' rights to regulate insurers, and the public's interest to allow such regulation.  15 U.S.C. §§ 1011, 1012 (b).  Moreover, once Plaintiff shows constitutional contacts through the common fact of issuance, delivery, or renewal in California, the burden is *on Defendant* to prove that some other state's law applies.  *Mazza v. American Honda Motor Co.,* 666 F.3d 581, 589–90 (9th Cir. 2012).  Defendant makes no such attempt here.

performance, or he or she may treat the repudiation as an anticipatory breach and seek damages immediately. *See id.* at 489. "Most significantly, ... in the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance." *Id.*

The time for performance here would be the death of the insured and Defendant has already admitted that all but two policy owners are still living. In short, there is no statute of limitations problem here for anyone in the class.[10]  To the extent the court disagrees for any reason, though, then the easy fix is to limit the class to those policy owners whose policies were terminated more than four years before the filing of this complaint, not to deny certification outright.

> 5.      *Dicta from Some Other Unpublished and Unfinished Trial Court Proceedings Changes Nothing.*

Defendant rests many of its arguments on the unpublished *McHugh* jury verdict that is on appeal – and now before the California Supreme Court. The *McHugh* superior court[11] ruled at summary judgment that the Statutes applied. Then, a jury found the insurer breached the policy. *See* Oppo. at 2:3-6. Despite this, the jury erroneously concluded that there was no resulting harm. *Id.* But the issue of harm never should have reached a jury because, as discussed, failure to strictly comply with statutory requirements for insurance policies automatically renders termination of the policy "ineffective." Cal. Ins. Code, §§ 10113.71(b)(1) and 10113.72(c). Indeed, this was the law in California with respect to faulty insurance terminations long before these Statutes became effective.  *See Mackey v. Bristol West Inc. Serv. Of Calif.*, 105 Cal.App.4th 1247, 1258 (Cal. Ct. App. 2003).

Defendant's citation to the Southern District's Minute Order in *Moriarty v. Am. Gen. Life Ins. Co.* is misplaced for the same reasons.  Additionally, the District Court in *Moriarty* did not finally decide the certification question. It merely denied the Plaintiff's motion *without prejudice*

---

[10] And perhaps more importantly for today, the question of *what statute of limitations applies to these claims* is yet another common one applicable equally to everyone.

[11] *McHugh v. Protective Life Ins. Co.,* Case No. 37-2014-00019212-CU-IC-CTL (San Diego Sup. Court January 5, 2017).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

to wait to see how the California Supreme Court was going to decide *McHugh*. *Moriarty v. Am. Gen. Life Ins. Co.*, 3:17-CV-1709-BTM-WVG, 2020 WL 6938388, at *2 (S.D. Cal. Nov. 25, 2020). The Southern District did raise some questions as dicta, but those questions were posed without any analysis of the language in The Statutes themselves mandating strict compliance. *McHugh* is simply of no help to the parties or the Court here.

**B.      Plaintiff's Claims are Typical**

Defendant cannot deny the simplicity of the case and Plaintiff's strict compliance theory, so throughout its Opposition it resorts to confusing the issues and focusing on the irrelevant. It does so again when it comes to "typicality."

Defendant starts by citing oft-quoted language from our Circuit noting that certification may not be appropriate if the representative is "preoccupied with defenses unique to it." *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011) (internal citation and quotation marks omitted). But the "defense" Defendant then identifies is not a defense at all. That Plaintiff submitted a change of address form, but did not sign it, is simply not relevant to these Statutes, which *automatically* make terminations ineffective when the insurance company does not strictly comply.

What Defendant is really doing is harping on irrelevant factual differences to attack typicality. But typicality refers merely "to *the nature* of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984-85 (internal citation and quotation marks omitted, emphasis added). "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Id*. at fn. 9, citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, the nature of Mrs. Siino's claim is identical to that of her peers: that the Defendant failed to apply The Statutes to her policy and that her policy was wrongfully terminated.

In summary, typicality is determined with reference to the Defendant's conduct and the plaintiff's legal theory. *Wagner v. NutraSweet Co*., 95 F.3d 527, 534 (7th Cir.1996). The conduct here–the failure to strictly apply The Statutes and the ensuing termination of the life insurance policies for non-payment of premium–is undisputed. And plaintiff's legal theory–that failure to

strictly comply with The Statutes automatically renders the terminations void - will be argued equally for everyone in the class. The typicality prong is, therefore, satisfied.

### C.     Pamela Siino Satisfies the Minimal Standard for Adequacy

Defendant fails to establish any significant or irreconcilable conflict among Plaintiff, her counsel, or the class, so it focuses instead on trying to establish that Plaintiff somehow is too timid or will not be "vigorous" in her prosecution of this matter. *Cf. Ellis*, 657 F.3d at 985 (describing a two-prong test for adequacy). But Defendant's attacks on the second "adequacy" sub-prong – if you can properly call them that - fail.[12]

Yet again, the things that Defendant claims are relevant really are not.  There are only two important question: (1) whether the insurance company provided all three of the protections mandated by The Statutes (actual *and* written 60-day grace, sufficient notice of lapse, and a right to designate a third-party); and (2) did the Defendant lapse the policy for non-payment of premium.  Neither question is in dispute here.  Consequently, whether Plaintiff opened the mail or let her husband do it, or whether Plaintiff, or her husband, was the one who haggled on the phone with the insurance company to try to reinstate the policy, are totally irrelevant. [13]

Also, anyone claiming that Mrs. Siino is not committed to this case or does not understand her obligations as a class representative is mistaken. Mrs. Siino has stuck through this case and worked hard to prosecute it. She already confirmed that she has worked diligently with counsel. *See* Siino Decl., ECF No. 70-15, at ¶ 8. She answered and verified discovery, provided all her family's relevant documents, and contributed her personal knowledge where required. *Id.* She sat for a deposition and had to submit her husband for deposition where they had to answer detailed

---

[12] Defendant cannot, nor does it attempt to show that Plaintiff somehow has antagonistic, conflicting, or collusive interests, which are the first concerns when evaluating "adequacy."  *Cf. Ellis*, 657 F.3d at 985; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1241 (9th Cir. 1998). And Defendant does not appear to be attacking Plaintiff's Counsel's adequacy at all.

[13] Also, Defendant's argument that Mrs. Siino is inadequate because she often trusted her husband to handle family financial matters, ignores reality.  Much of the time when there is a life insurance dispute, the owner – who is usually the insured – is dead.  The case can only be prosecuted, therefore, with the assistance of family members.  Also, financial products are sometimes gifted by family members, who maintain responsibility for overseeing them.  Also, many families choose to let their agents and/or their financial planners handle their insurance affairs.  That Mrs. Siino sought assistance in her financial affairs makes her more typical and adequate, not less.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

personal questions - like about the personal details and medical conditions disclosed on their insurance application.  *Id.* Mrs. Siino is ready to see this case through.  *Id.; see also* Nicholas Decl., ECF No. 70-2 at ¶¶ 14-15.  In short, Mrs. Siino certainly understands her obligations as a class representative and has honored those obligations over the life of this case. Both Mrs. Siino and her counsel are adequate.

### D. Plaintiff's Claims Satisfy Rule 23(b)(2).

Certification under 23(b)(3) and 23(b)(2) are not mutually exclusive as Defendant implies. *Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000) (one can pursue 23(b)(2) and (b)(3) simultaneously). And Defendant does not truly contest that it has "acted or refused to act on grounds that apply generally to the class" in refusing to provide all the Statutes' protections to all class policies, as contemplated by the plain text of Rule 23(b)(2).  *See* Fed. R. Civ. P. Rule 23(b)(2).

Importantly, all class members seek the *same* declaration:  that the Statutes apply and that, in turn, their policies were wrongfully terminated.  Thus, this is an ideal 23(b)(2) case.  *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them… In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.") (internal citations and quotation marks omitted).

Moreover, Defendant admits that all but two of the 500+ class members are living policyholders.  *See* Oppo. at 14:26-15:12. Thus, only those two (less than 0.4% of the whole class) are potentially entitled to money in the form of their death benefit.  In any event, they still need the judicial declaration that their policies were wrongfully terminated in in the first place.  Again, the primary relief sought in this matter is the declaratory relief.

Defendant fails to work around these base principles.  First, *Wal-mart* does not bar certification under Rule 23(b)(2) here as Defendant suggests.  Again, *Wal-Mart* confirms that the "key" inquiry for 23(b)(2) is whether the whole class seeks and will benefit from the same injunction – which is true here.  Moreover, *Wal-Mart* confirmed that certification under (b)(2) is

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

still appropriate where monetary relief is incidental to injunctive relief. 564 U.S. at 360 (no ban on 23(b)(2) monetary claim certification), 365-66 (incidental monetary claims may be 23(b)(2) certified).[14] Here everyone requests, first and foremost, a declaration that their policies were wrongfully terminated and are still in force today. For the tiny percent of deceased policyholders, additional monetary damages flow directly from that declaratory relief. Certification under 23(b)(2) is warranted here and not defeated by a small tag-along money component.

### E.    Class Treatment Is Not Just Superior Under Rule 23(B)(3), It Is Essential

Next, Defendant's superiority arguments ignore, first, the fact that Defendant erroneously advised hundreds of consumers, in writing, that their policies lapsed. Therefore, class members would not know they have rights, much less understand them. That Mrs. Siino's husband happened to call an attorney after seeing an advertisement tipping him off to a potential claim does not change that practical reality and Defendant cites no case to suggest otherwise.

Ultimately, Defendant's position highlights its desire to avoid important obligations to hundreds of vulnerable consumers, leave insureds in this state with the false impression that their policies lapsed, and vigorously litigate the incredibly small percentage[15] of cases that arise. This stance ignores the very reason class actions are superior, especially in the consumer context: class actions are an "evolutionary response" to effectively redress injuries "unremedied by the regulatory action of government." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339 (1980). Our Legislature attempted to protect insureds from inadvertent lapse, yet Defendant ignores those protections.

Defendant's other main argument – that the face amounts of the policies are high enough to incentivize individual suits – is similarly misplaced. First, that argument is belied by the undisputed fact that only one person has come forward to sue so far. In other words, the potential

---

[14] Newberg on Class Actions § 4:36 (5th ed.) (citing *Wal-Mart*) (allowing monetary damages under 23(b)(2) where they flow from other relief).

[15] Over the 8 years since the Statutes became effective, only one policy owner – Mrs. Siino – has filed a lawsuit against Defendant about them. Defendant mentions no others by any other class members and Plaintiff is aware of none. Nicholas Decl., ECF No. 70-2, ¶ 16; *see* Fed. R. Civ. Proc. 23(b)(3) (requiring analysis of "the extent and nature" of any litigation "already begun" by the same class members).

incentive has not been enough to overcome the ignorance of the claim. Second, the face value of the policies is a weak defense to certification when only two out of hundreds of policies qualify for recovery of that face value. A class action is superior and necessary to correct Defendant's (largely admitted) wrongs and Defendant's counterarguments are unpersuasive.[16]

**F.  Fed. R. Civ. P. 23(c)(4) Is a Viable Alternative to Full Certification If Needed**

Finally, where a large class shares a common legal question, Rule 23(c)(4) is an ideal tool when it is needed. *See Mejdrech v. Met-Coil Sys. Corp.,* 319 F.3d 910, 911 (7th Cir. 2003) (Posner, J.) (confirming 23(c)(4) certification of the core issue). Defendant's main attack[17] against Rule 23(c)(4) issue certification is just a re-hash of its argument that "individualized" inquiries regarding things like causation and breach render certification difficult. Defendant is wrong on those points for the reasons already discussed above. Additionally, Defendant is missing the point of issue certification. Such certification is available *when* common issues do not predominate under 23(b)(3), i.e., as an alternative to certification under the other parts of Rule 23. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *In re Nassau Cty. Strip Search Cases,* 461 F.3d 219, 226 (2d Cir. 2006) (agreeing with *Valentino*). If the Court thinks it is necessary here, the Court can certify an issue class under 23(c)(4).

**III.  CONCLUSION**

Plaintiff respectfully requests that the Court grant Plaintiff's Motion in full.

Respectfully submitted:
DATED:  June 18, 2021

**NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Alex Tomasevic*
Craig M. Nicholas (SBN 178444)

---

[16] Defendant's remaining argument about manageability and individualized issues hinge on the same flawed analysis of The Statutes' requirements. No absent class member will have to prove their standing to sue. *In re Zappos.com, Inc.*, 888 F.3d at 1028, fn. 11; *Bates*, 511 F.3d at 985 (only one member must prove standing to sue). But they easily could in any event because they all felt the same harm by definition: the cancellation and continued repudiation of their policies.

[17] Defendant mentions the Seventh Amendment in a footnote. But the Seventh Amendment is not of concern here, where the core issue Plaintiff seeks to certify under Rule 23(c)(4) – whether the Statutes apply to all policies, including pre-2013 policies – would not need to be revisited in subsequent proceedings. *Cf. Valentino.*, 97 F.3d at 1232 (rejecting the line of cases cited by Defendant).

Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

Attorneys for Plaintiff

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION